STATE OF CONNECTICUT *v.* ALBERT HIGGINS
(AC 21913)

Schaller, Flynn and West, Js.

474

Argued September 20, 2002—officially released January 7, 2003

*Salvatore Bonanno*, with whom were *Michael A. Georgetti* and, on the brief, *Janis C. Jerman*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John M. Bailey*, former chief state's attorney, *Kimberley N. Perrelli*, senior assistant state's attorney, and *Joy K. Fausey*, former deputy assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The principal issue to be decided in this appeal is whether, in light of the defendant's acquittal of the crimes of sexual assault in the first degree and risk of injury to a child, the jury was foreclosed from using evidence from the state's case-in-chief that the defendant had sexually molested the victim in considering his guilt for the crime of tampering with a witness. We conclude that it was not foreclosed from considering the evidence and that the evidence of molestation was sufficient to permit the jury to infer that the defendant was telling the victim to testify falsely when he told her to tell the police that nothing ever happened between them.

The defendant, Albert Higgins, appeals from the judgment of conviction, rendered after a jury trial, of tampering with a witness on March 23, 1999, in violation of General Statutes § 53a-151. On appeal, the defendant claims that the trial court improperly denied his motion for a judgment of acquittal notwithstanding the verdict and his motion for a new trial. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our determination of this appeal. The defendant was convicted on one count of a six count information. His only conviction arose from the sixth count, charging

him with tampering with a witness on March 23, 1999, in violation of § 53a-151. The remaining counts, of which he was acquitted, were as follows. Counts one and two charged sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2); counts three and four charged risk of injury to, or impairing the morals of, a child in violation of General Statutes § 53-21 (2); count five charged tampering with a witness on or about March, 1999, in violation of § 53a-151.[1] The defendant elected to be tried by a jury, and, at the close of the state's case, on February 2, 2001, he moved for a judgment of acquittal, pursuant to Practice Book § 42-40 et seq., claiming that the state had not presented sufficient evidence to support a guilty verdict. The court delayed ruling on the motion until after the close of all the evidence, stating that it was doing so *without prejudice* to the defendant. On February 9, 2001, after the close of evidence, the court denied the motion.[2]

The jury found the defendant not guilty on counts one through five and convicted him on count six, tampering with a witness on March 23, 1999. Four days later, on February 13, 2001, the defendant moved for a judgment of acquittal notwithstanding the verdict and for a new trial. On May 4, 2001, the court denied these motions and sentenced the defendant to five years incarceration, execution suspended after one year, and four years probation.

[1] The state separated the tampering charges into two counts, count five charged the defendant with tampering with a witness, the victim, during the month of March, 1999. The court charged the jury that these dates would not include conduct occurring on March 23, 1999. The defendant was specifically charged in count six with conduct specifically occurring on March 23, 1999, and the court so charged the jury.

[2] The court allowed very brief argument on the motion as to the fifth count, tampering with a witness in March, 1999, only. Although the court stated that the motion was denied, it appears that the denial went only to the fifth count. Further discussion of the motion occurred at the hearings on March 23, 2001, and May 4, 2001. See footnote 3.

Thereafter, the defendant filed this appeal, claiming that the court improperly denied his motions for a judgment of acquittal notwithstanding the verdict and for a new trial because (1) the evidence was insufficient to support the jury's guilty verdict, (2) the guilty verdict was inconsistent with the not guilty verdict on the other counts, and (3) § 53a-151 is so vague and indefinite as to violate the due process clause of article first, § 8, of the constitution of Connecticut and the fourteenth amendment to the constitution of the United States. We affirm the judgment of the trial court.

The following evidence was introduced during the state's case-in-chief. The victim testified that the defendant began sexually abusing her when she was ten years old and did so for two years. The victim testified that the first time the defendant molested her, he made her rub his penis, and he inserted his penis into her vagina. She testified that this hurt and that the defendant stopped because she started to cry. Several more incidents occurred where the defendant continued sexually molesting the victim in this same manner. After the victim informed her mother of the abuse and they notified the police, the defendant spoke to the victim about the abuse. He asked her if she had talked to the police and told her that "when [she does] talk to the police, just tell them nothing ever happened." The mother of the victim also testified that the defendant telephoned the victim even after they reported the alleged abuse to the police.

Detective Cindy Lloyd testified that she spoke with the defendant on March 10, 1999, notified him of the allegations against him and told him that it would not be a good idea for him to speak with the alleged victim. After learning that the defendant went to the victim's school to speak with her, Lloyd, again, on March 23, 1999, spoke with him and told him not to have any contact with the victim.

The victim testified that the defendant came to her school, asked her why her mother was behaving so strangely, asked her if she had talked to the police and told her to tell them that nothing happened. She also gave a statement to the police concerning the defendant's telephone calls. When asked by the prosecutor if she recalled any specific dates that the defendant had telephoned her and told her to tell the police that nothing happened, the victim had no specific recall. After refreshing her memory with the police report dated March 25, 1999, concerning the defendant's contact with her, the victim testified that the defendant had telephoned her on March 23, 1999.

I

The defendant first claims that the court improperly denied his motions for a judgment of acquittal notwithstanding the verdict and for a new trial because the evidence was insufficient to support the jury's guilty verdict on the charge of tampering with a witness on March 23, 1999.[3] The defendant argues that the court must look only to the state's case-in-chief when determining the sufficiency of the evidence because the trial court delayed its ruling, *without prejudice*, on his motion for a judgment of acquittal, which he made at the close of the state's case.[4] To look beyond the state's

---

[3] Although the defendant claims, inter alia, that the court improperly denied his motion for a new trial, procedurally, "if we were to rule that the evidence was insufficient, the defendant would be entitled to an acquittal rather than a new trial. *Burks* v. *United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)." (Internal quotation marks omitted.) *State* v. *Fernandez*, 198 Conn. 1, 21, 501 A.2d 1195 (1985).

[4] On February 7, 2001, before calling the jury into the courtroom and resuming the trial, the following colloquy occurred:

"[Defense Counsel]: Your Honor, I'll leave it to the court's discretion. We filed on—it was so long ago—it was Friday, I think it was, a motion for judgment of acquittal. I don't know if the court prefers to defer ruling on that until the close of all evidence. If His Honor does, we have no objection to that, Your Honor.

"The Court: Yes, well I'd like to get started. It's quarter of eleven. I have reviewed all the evidence to date in working on the charge. We have

case-in-chief, the defendant argues, would be prejudicial. We agree. The state, however, argues that we must adhere to the waiver rule and review the evidence in toto, including the evidence introduced by the defendant after the close of the state's case. Because of the delayed ruling "without prejudice" to the defendant on the motion for a judgment of acquittal, we first analyze whether the waiver rule is applicable to this case and conclude that it is not.[5]

## A

Our rules of practice concerning the submission of a motion for a judgment of acquittal are as follows. Practice Book § 42-40 provides in relevant part: "After the close of the prosecution's case-in-chief or at the close of all the evidence, upon motion of the defendant or upon its own motion, the judicial authority shall order the entry of a judgment of acquittal as to any

effectively a two day snowstorm, which has delayed the progress of the case. So, we'll let you argue the entire thing without prejudice when we've concluded.

"[Defense Counsel]: Thank you, Your Honor."

On March 23, 2001, the court heard oral argument on the motions for a judgment of acquittal notwithstanding the verdict and for a new trial.

On May 4, 2001, the following colloquy occurred:

"The Court: . . . Did the defendant make a motion for judgment of acquittal at the close of the state's case?

"[Defense Counsel]: I can answer that, Your Honor. Yes, I did. I filed the written motion at that time. And there was an understanding that the motion would be not ruled on then, but ruled on at the close of all evidence without prejudice.

"[Prosecutor]: That is also my recollection, Your Honor.

"[Defense Counsel]: It was a written motion I believe, Your Honor.

"The Court: Yes, I shouldn't have done that. Okay."

[5] Neither the state nor the defendant argues, nor does it appear, that the trial court looked beyond the state's case-in-chief when deciding the motion for judgment of acquittal notwithstanding the verdict. At the March 23, 2001 hearing, when defense counsel stated that he wanted to make it clear that the defendant had filed the motion for judgment of acquittal at the close of the state's case, the court responded: "I'm treating it that way." The court also explained to the prosecutor that defense counsel was arguing that there was insufficient evidence in the state's case-in-chief.

principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty."

Practice Book § 42-41 provides: "If the motion is made after the close of the prosecution's case in chief, the judicial authority *shall* either grant or deny the motion before calling upon the defendant to present defendant's case in chief. If the motion is not granted, the defendant may offer evidence without having reserved the right to do so." (Emphasis added.)

Practice Book § 42-42 provides: "If the motion is made at the close of all the evidence in a jury case, the judicial authority may reserve decision on the motion, submit the case to the jury, and decide the motion either before the jury return a verdict or after they return a verdict of guilty or after they are discharged without having returned a verdict."

Section 42-41 of the rules of practice specifically directs the court either to grant or to deny a motion for a judgment of acquittal that is submitted at the close of the state's case-in-chief. Although § 42-42 allows the court the discretion to delay ruling on a motion that is submitted at the close of all evidence, until after the jury renders its verdict, no such discretion is authorized by § 42-41.

Under our current law, if the court denies a motion for a judgment of acquittal at the close of the state's case-in-chief, the defendant, should he or she decide to put forth evidence, proceeds at his or her own risk that evidence produced in the defense case may be used to remedy deficiencies in the state's case-in-chief, resulting in a conviction that otherwise would not have been possible. See *State* v. *Rutan*, 194 Conn. 438, 440–41, 479 A.2d 1209 (1984). This principle is known as the waiver rule. See id. In *Rutan*, our Supreme Court discussed the waiver rule and its implications for a

criminal defendant. See id., 440–44. The court explained that "[t]he waiver rule . . . forces the defendant to choose between waiving the right to a defense and waiving the right to put the state to its proof." Id., 440–41.

The defendant's motion for a judgment of acquittal was not acted on at the end of the state's case, as our rules of practice require. Therefore, because the court delayed ruling on the motion for a judgment of acquittal *without prejudice*, we conclude, as did the trial court,[6] that to avoid prejudicing the defendant, only the evidence that was presented by the state in its case-in-chief is material to consideration of the defendant's claim of insufficient evidence and that no waiver of his right to have the motion decided solely on that evidence occurred by virtue of his decision to put on evidence when the court had reserved judgment on his motion. Accordingly, as we undertake appellate review of the denial of the motion for a judgment of acquittal, we will examine the legal sufficiency of the evidence at the close of the state's case-in-chief.

B

We first turn to the defendant's claim that the evidence in the state's case-in-chief was insufficient to support a guilty verdict on the charge of tampering with a witness on March 23, 1999, in violation of § 53a-151.[7] The defendant argues that "[t]here is no evidence in the record that on March 23, 1999, the defendant induced [the victim] to testify falsely. The record of the state's case-in-chief is devoid of any evidence of the

[6] See footnote 4.

[7] General Statutes § 53a-151 provides: "(a) A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding.

"(b) Tampering with a witness is a class D felony."

defendant's specific intent to induce false testimony." We reject the defendant's claim.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

"[In] determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not

required to draw only those inferences consistent with innocence. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) Id., 668–69.

To support the defendant's conviction on count six, the state had to prove the following elements beyond a reasonable doubt: (1) that the defendant believed an official proceeding was pending or was about to be instituted against him; and (2) that the defendant, on March 23, 1999, induced or attempted to induce the victim to withhold testimony or to testify falsely. See General Statutes § 53a-151; *State* v. *Cavallo*, 200 Conn. 664, 668–69, 513 A.2d 646 (1986).

The defendant does not contest that the testimony of Lloyd provided sufficient evidence that the defendant knew that a proceeding was about to be instituted against him. As to the alternative ways of establishing the second element of a tampering charge,[8] we agree

---

[8] The state can prove the second element of the statute by establishing that (1) a person induced or attempted to induce a witness to testify falsely, (2) a person induced or attempted to induce a witness to withhold testimony, (3) a person induced or attempted to induce a witness to elude legal process summoning him or her to testify or (4) a person induced or attempted to induce a witness to absent himself or herself from any official proceeding. Because the record in this case contained evidence only as to the first two alternatives, the court properly charged the jury only as to the first two of those alternative ways of satisfying the second element.

with the defendant that although there was testimonial evidence from the victim that the defendant had told her, "Don't say anything," the state did not offer evidence of when that occurred. This would be insufficient evidence to prove that the defendant, on the specific date of March 23, 1999, attempted to induce the victim to withhold testimony as charged.[9] Nevertheless, the state may prove the second prong of the tampering statute, not just by proof of the defendant's importuning another to withhold evidence but also by proof of the defendant's urging another to testify falsely.[10] If the jury believed, on the basis of the evidence and inferences drawn therefrom, that some improper and unlawful sexual behavior did occur between the defendant and the victim, then it was reasonable for the jury to conclude that the defendant was telling her to lie when, on March 23, 1999, he specifically instructed her to tell the police that "nothing ever happened." The mere fact that the jury acquitted the defendant of the substantive charges relating to alleged sexual molestation does not dictate a conclusion that the jury necessarily found that no such conduct occurred, nor does it foreclose consideration of it in weighing guilt on the tampering charge.

In this case, the jury, or the court at the close of the state's case-in-chief, reasonably could have concluded that the defendant had engaged in some improper sexual behavior toward the victim. His words, then, to tell the police that "nothing ever happened," if the jury believed the evidence that something did happen, were consistent with an attempt to induce the victim to testify

[9] Although ordinarily the state does not have to prove that a crime occurred on the specific date alleged; see State v. Mendoza, 49 Conn. App. 323, 328–29, 714 A.2d 1250, cert. denied, 247 Conn. 903, 720 A.2d 516 (1998); in this case the state precisely charged the defendant in count six with tampering with a witness on the specific date of March 23, 1999. Accordingly, the trial court ruled, and we agree, that the conduct alleged in count six has to have occurred specifically on March 23, 1999. See footnote 1.

[10] See footnote 7.

falsely. After reviewing the evidence in the light most favorable to sustaining the jury's verdict, as we must, we conclude that there was sufficient evidence to support the denial of the defendant's motions for a judgment of acquittal notwithstanding the verdict and for a new trial. Accordingly, we reject the defendant's claim of evidentiary insufficiency.

## II

We next analyze in more detail the defendant's related claim that the guilty verdict on the sixth count, tampering with a witness on March 23, 1999, was inconsistent with the not guilty verdict on the other counts. He argues that the verdict is inconsistent because he could not be guilty of inducing the victim to testify falsely if the jury believed that he was not guilty of the other crimes for which he was charged because, in effect, these not guilty verdicts logically mean they found that no molestation had occurred. Accordingly, he argues, the inconsistent verdict should have been set aside. We disagree.

The defendant appears to allege only factual inconsistencies in the jury's verdict.[11] We simply note that a

[11] Regarding any possible claim of legal inconsistency, we conclude that the jury's verdict was not inconsistent as a matter of law. "[W]here the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration. . . . If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." (Citations omitted; internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 244, 745 A.2d 800 (2000).

A defendant may be found guilty of tampering with a witness on a date specific if the state establishes that the defendant, on that specific date, with the belief that an official proceeding was, or was about to be, commenced against him, sought to induce a witness to testify falsely or withhold testimony. In this case, the other charges against the defendant, to wit, sexual assault in the first degree and risk of injury to or impairing the morals of a child, do not contain the same elements as the charge for which the

verdict that is factually inconsistent will not be overturned on appeal. Our Supreme Court "has refused to reverse a verdict of guilty on one count where that verdict appeared to be inconsistent with a verdict of acquittal on another count. . . . The law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise." (Internal quotation marks omitted.) *State v. DeCaro*, 252 Conn. 229, 242, 745 A.2d 800 (2000). "[I]nconsistency of the verdicts is immaterial. . . . As Justice Holmes long ago observed in the case of *Dunn v. United States*, 284 U.S. 390, 393–94, 52 S. Ct. 189, 76 L. Ed. 356 (1932): The most that can be said in such cases [i.e., of inconsistent verdicts] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity. . . . That the verdict may have been the result of compromise, or a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (Citations omitted; internal quotation marks omitted.) *State v. Bailey*, 209 Conn. 322, 344–45, 551 A.2d 1206 (1988).

Our review of the evidence in the record indicates that it was sufficient for the jury reasonably to reach the conclusions that it did. "[T]he many possible explanations for the acquittal on [some] charge[s] did not necessarily indicate that the jury had acted improperly in convicting the defendant on [another]." (Internal quotation marks omitted.) *State v. Cassidy*, 3 Conn. App. 374, 390, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985), quoting *State v. Martin*, 189 Conn. 1,

defendant was convicted. Accordingly, any claim of legal inconsistency in relation to these charges must fail.

7, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983). The defendant was "given the benefit of [his] acquittal on the counts on which [he] was acquitted, and it is neither irrational nor illogical to require [him] to accept the burden of conviction on the [count] on which the jury convicted." (Internal quotation marks omitted.) *State* v. *Cassidy*, supra, 390, quoting *United States* v. *Powell*, 469 U.S. 57, 69, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984).

We conclude from our examination of the record that the evidence presented in the state's case-in-chief was sufficient to sustain the verdict on the charge of tampering with a witness on March 23, 1999, and that the jury was not foreclosed from considering it by the doctrine of inconsistency. The court, therefore, did not improperly refuse to render a judgment of acquittal not withstanding the verdict.

## III

The defendant's final claim is that, as applied to this case, § 53a-151 is so vague and indefinite that it violates the due process clause of article first, § 8, of the constitution of Connecticut and the fourteenth amendment to the constitution of the United States.[12] The defendant claims that, because § 53a-151 does not clearly define his March 23, 1999 conduct as illegal, the statute is void for vagueness as applied to him. We disagree.

"The standard that we use to determine whether a statute is void for vagueness under the fourteenth amendment to the United States constitution is well

[12] The defendant cites his right to due process of law under the fourteenth amendment to the federal constitution and article first, § 8, of the Connecticut constitution. "Because the defendant does not provide a separate analysis under the state constitution, for purposes of this case we treat the rights as providing coextensive protection." *State* v. *Provost*, 251 Conn. 252, 263 n.7, 741 A.2d 295 (1999), cert. denied, 531 U.S. 822, 121 S. Ct. 65, 148 L. Ed. 2d 30 (2000).

established. A statute . . . [that] forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. . . . Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." (Citations omitted; internal quotation marks omitted.) *State* v. *Cavallo*, supra, 200 Conn. 667.

In this case, the language of § 53a-151 satisfies this test. The statute directs that "[a] person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." General Statutes § 53a-151 (a).

The defendant challenges the proposition that § 53a-151 provided him with proper notice that he was prohibited from telephoning the victim and instructing her to tell the police that nothing had happened. He claims that the term "induces or attempts to induce" is ambiguous as it relates to his conduct. We find no merit in this claim.

"The language of § 53a-151 plainly warns potential perpetrators that the statute applies to any conduct that is intended to prompt a witness to testify falsely or to refrain from testifying in an official proceeding that the perpetrator believes to be pending or imminent. The legislature's unqualified use of the word 'induce' clearly informs persons of ordinary intelligence that any conduct, whether it be physical or verbal, can potentially give rise to criminal liability. Although the statute does not expressly mandate that the perpetrator intend to cause the witness to alter or withhold his testimony, this implicit requirement is apparent when the statute

is read as a whole. . . . By limiting the statute's application to situations where the perpetrator believes that an official proceeding is pending or about to be instituted, the legislature indicated that it did not envisage outlawing conduct that inadvertently convinces a witness to testify falsely or to refuse to testify. The legislature's choice of the verb 'induce' connotes a volitional component of the crime of tampering that would have been absent had it employed a more neutral verb such as 'cause.' Furthermore, the statute's application to unsuccessful, as well as successful, attempts to induce a witness to render false testimony supports our conclusion that the statute focuses on the mental state of the perpetrator to distinguish culpable conduct from innocent conduct." (Citations omitted.) *State* v. *Cavallo*, supra, 200 Conn. 668–69.

The defendant telephoned the victim and, despite repeated police instruction to refrain from contacting her, did contact her on March 23, 1999, instructing her to tell the police that "nothing ever happened." In light of the plain language of § 53a-151, we cannot say that the defendant did not possess fair warning that this course of conduct was illegal.

The judgment is affirmed.

In this opinion the other judges concurred.