Higgins v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2011

(Submitted : February 7, 2012                Decided: April 19, 2012)

——————————————————————————————

ALBERT LLOYD HIGGINS,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR.,
United States Attorney General,

*Respondent*.

Docket No. 11-924(ag)

——————————————————————————————

B e f o r e : KATZMANN and CARNEY, *Circuit Judges*, and RESTANI,* *Judge*.

————————————

Petition for review from the BIA's February 11, 2011 decision denying petitioner's requests for cancellation of removal under 8 U.S.C. § 1229b(a) and a waiver of inadmissibility under 8 U.S.C. § 1182(h). We hold that a conviction for witness tampering under Connecticut General Statutes § 53a-151 constitutes an "offense relating to obstruction of justice" within the meaning of 8 U.S.C. § 1101(a)(43)(S), and that Higgins is therefore ineligible for relief. Accordingly, the petition for review is **DISMISSED**.

Judge Katzmann concurs in a separate opinion.

_____

* The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

Carlton L. Hume, Hume Law Firm, LLC, Hartford, Conn., *for Petitioner* (on submission).

Tony West, Assistant Attorney General; Leslie McKay, Assistant Director; Kristofer R. McDonald, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent* (on submission).

PER CURIAM:

Petitioner Albert Lloyd Higgins petitions for review of a February 11, 2011 decision issued by the Board of Immigration Appeals (the "BIA" or the "Board") denying his requests for cancellation of removal under 8 U.S.C. § 1229b(a) and a waiver of inadmissibility under 8 U.S.C. § 1182(h). In order to resolve this appeal, we must determine whether a conviction for witness tampering under Connecticut General Statutes ("CGS") § 53a-151 constitutes an "offense relating to obstruction of justice" within the meaning of 8 U.S.C. § 1101(a)(43)(S), a definitional section of the Immigration and Nationality Act ("INA") listing the various "aggravated felon[ies]" that may disqualify a petitioner from various forms of relief. For the reasons explained herein, we conclude that a conviction under CGS § 53a-151 constitutes an "offense relating to obstruction of justice," and we therefore dismiss the petition for review.

**BACKGROUND**

Albert Lloyd Higgins ("Higgins" or "petitioner"), a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident in April 1987. On May 4, 2001, Higgins was convicted, following a jury trial, of one count of tampering with a witness in violation of CGS § 53a-151. The conviction stemmed from allegations that Higgins sexually

assaulted a minor and later instructed her that, if she talked to the police, she should tell them that "nothing ever happened." *See State v. Higgins*, 811 A.2d 765, 768 (Conn. App. Ct. 2003). The jury acquitted Higgins of the underlying sexual-assault charges, but found him guilty of witness tampering, for which crime Higgins was sentenced principally to five years' incarceration, execution suspended after one year. *Id.* Higgins appealed his conviction, arguing, *inter alia*, that the trial court improperly denied his motions for a judgment of acquittal notwithstanding the verdict and for a new trial because the guilty verdict on the witness tampering charge was inconsistent with the judgment of acquittal on the sexual-assault charges. *Id.* The Appellate Court of Connecticut affirmed Higgins's conviction in a published decision dated January 7, 2003. *Id.*

In November 2008, Higgins applied for admission, and was admitted, to the United States at Miami International Airport as a returning lawful permanent resident. On March 9, 2009, the Department of Homeland Security served Higgins with a Notice to Appear ("NTA") in immigration proceedings, charging him with removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude. On May 28, 2009, Higgins submitted a written pleading denying the allegation concerning his criminal conviction and denying he was removable as charged. He also indicated his intent to seek termination of his immigration proceedings, cancellation of removal, adjustment of status and, in the alternative, voluntary departure. In hearings held before an immigration judge ("IJ") on June 30, 2009 and September 8, 2009, Higgins conceded that his conviction constituted a crime involving moral turpitude, but argued that it did not constitute an aggravated felony. He also indicated his intent to apply for a waiver of inadmissibility under § 212(h) of the INA, 8 U.S.C. § 1182(h).

On September 30, 2009, the IJ denied Higgins's applications for relief and ordered him removed to Jamaica. Employing the analytical framework set forth by the BIA in its precedential decision *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (BIA 1999) (en banc), the IJ concluded that Higgins's conviction under CGS § 53a-151 constitutes an offense "relating to obstruction of justice," an aggravated felony rendering Higgins ineligible for cancellation of removal and a waiver of inadmissibility. Higgins appealed to the BIA, which affirmed the IJ's decision on February 11, 2011. Like the IJ, the BIA applied the reasoning of *Espinoza-Gonzalez* and concluded that a conviction under CGS § 53a-151 meets the definition of "an offense relating to obstruction of justice." On March 9, 2011, Higgins filed a timely petition for review in this Court, and this appeal followed.

## DISCUSSION

In his petition, Higgins argues that his conviction for violating CGS § 53a-151 does not constitute an "offense relating to obstruction of justice" within the meaning of 8 U.S.C. § 1101(a)(43)(S), and that he did not in fact obstruct justice as that term is defined under federal law. The Attorney General counters that: (1) this Court should defer to the BIA's reasonable interpretation of "an offense relating to obstruction of justice" as set forth in *Espinoza-Gonzalez*; (2) Higgins's conviction for witness tampering under CGS § 53a-151 constitutes an "offense relating to obstruction of justice"; and (3) Higgins may not use this appeal to collaterally attack his witness-tampering conviction.

## I.    Jurisdiction and Standard of Review

Under the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, 302, we lack jurisdiction to review "any final order of removal against an alien who is removable by reason of

-4-

having committed [certain drug and aggravated felony] offense[s]." 8 U.S.C. § 1252(a)(2)(C).

We retain jurisdiction, however, to review the legal question of whether a conviction underlying an order of removal, or the denial of relief from an order of removal, constitutes an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(D); *Oouch v. U.S. Dep't of Homeland Sec.*, 633 F.3d 119, 121 (2d Cir. 2011). "The inquiry determines our jurisdiction: If [the] conviction is an aggravated felony, we must dismiss the petition for lack of jurisdiction; if not, we may exercise jurisdiction and [review the petition]." *Oouch*, 633 F.3d at 121. Accordingly, the jurisdictional issue merges with the merits, and we are therefore required to consider Higgins's substantive argument that his Connecticut conviction is not an aggravated felony under the INA. *See Mugalli v. Ashcroft*, 258 F.3d 52, 55 (2d Cir. 2001).

Under the circumstances of this case, it is well-established that we review the IJ's decision as supplemented by the BIA as the final agency determination. *See Mufied v. Mukasey*, 508 F.3d 88, 90 (2d Cir. 2007) ("When the BIA adopts the decision of the IJ and supplements the IJ's decision or emphasizes particular aspects of it, we review the IJ's decision as supplemented by the BIA as the final agency determination."). We defer to the factual findings of the BIA and the IJ if they are supported by substantial evidence, and we review *de novo* legal conclusions and the application of legal principles to undisputed facts. *Id.* at 91.

## II.  Applicable Law: The INA's Definition of "Aggravated Felony" and Our Categorical Approach

A conviction for an "aggravated felony" renders Higgins ineligible for both cancellation of removal and a waiver of inadmissibility. *See* 8 U.S.C. § 1229b(a); 8 U.S.C. § 1182(h). The INA defines the term "aggravated felony" to include, as relevant here, "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the

term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S). In this case, there is no question that Higgins was convicted of an offense "for which the term of imprisonment is at least one year." *See United States v. Pacheco*, 225 F.3d 148, 153-54 (2d Cir. 2000) (construing the phrase "for which the term of imprisonment is at least one year" to refer to the actual sentence imposed rather than the authorized minimum term). Accordingly, if a conviction for witness tampering under CGS § 53a-151 constitutes an "offense relating to obstruction of justice," we must dismiss Higgins's petition.

In order to determine whether a conviction under CGS § 53a-151 "relat[es] to obstruction of justice," we apply a categorical approach "that looks to the elements of the penal statute rather than the particulars of the alien's conduct." *Oouch*, 633 F.3d at 122; *see also Taylor v. United States*, 495 U.S. 575, 601-02 (1990); *Dickson v. Ashcroft*, 346 F.3d 44, 48 (2d Cir. 2003). Under this analysis, "[w]e must ask whether every set of facts violating a statute satisfies the criteria for removability, keeping in mind that only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant." *Abimbola v. Ashcroft*, 378 F.3d 173, 176 (2d Cir. 2004) (internal citations, quotation marks, and alterations omitted).

## III.    Deference to the BIA's Decision in *In re Espinoza-Gonzalez*

The meaning of the phrase "relating to obstruction of justice" presents a question of first impression in this Circuit. The BIA, however, has issued a precedential opinion analyzing its meaning. In *Espinoza-Gonzalez*, the BIA considered whether the federal crime of misprision of a felony[1] constitutes an offense relating to obstruction under section 101(a)(43)(S) of the INA.

---

[1] The United States Code defines "misprision of a felony" as follows:

Whoever, having knowledge of the actual commission of a felony cognizable by a

-6-

22 I. & N. Dec. at 889. The BIA looked to the chapter of the federal criminal code entitled

"Obstruction of Justice" to guide its interpretation of the phrase, which is not specifically defined

in the United States Code. *Id.* at 891. The BIA reasoned that, "[i]n general, the obstruction of

justice offenses listed in 18 U.S.C. §§ 1501-1518 have as an element interference with the

proceedings of a tribunal or require an intent to harm or retaliate against others who cooperate in

the process of justice or might otherwise so cooperate." *Id.* at 892. The BIA further reasoned

that, by utilizing the term "obstruction of justice" in the INA, Congress intended to limit the

types of offenses that potentially could be classified as "obstruction of justice" offenses for

immigration purposes to those analogous to the "obstruction of justice" offenses listed in the

United States Code:

> Congress did not adopt a generic descriptive phrase such as "obstructing justice"
> or "obstruct justice," but chose instead a term of art utilized in the United States
> Code to designate a specific list of crimes. It employed that term in conjunction
> with other crimes (e.g., perjury and bribery) that also are clearly associated with
> the affirmative obstruction of a proceeding or investigation. We do not believe
> that every offense that, by its nature, would tend to "obstruct justice" is an offense
> that should properly be classified as "obstruction of justice." . . . To include all
> offenses that have a tendency to, or by their nature do, obstruct justice would cast
> the net too widely.

*Id.* at 893-94. Further supporting a more narrow interpretation of the phrase, the BIA concluded,

is the fact that the Supreme Court has construed the "obstruction of justice" offenses in a manner

that limits their applicability, thereby declining to accord the various offenses the full range of

---

> court of the United States, conceals and does not as soon as possible make known
> the same to some judge or other person in civil or military authority under the
> United States, shall be fined under this title or imprisoned not more than three
> years, or both.

18 U.S.C. § 4.

their arguably wide scope. *Id.* at 892-93 (citing *United States v. Aguilar*, 515 U.S. 593, 598-99 (1995) (interpreting 18 U.S.C. § 1503, a "catchall" statute prohibiting influencing or injuring officer or juror generally, to require that the action taken by the accused must be with an intent to influence judicial or grand jury proceedings).

Guided by these principles and applying the categorical approach, the BIA concluded that misprison of a felony does not constitute an "offense relating to obstruction of justice" because "it lacks the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." *Espinoza-Gonzalez*, 22 I. & N. at 894. In other words, the BIA concluded that, for a crime to qualify as an "offense relating to obstruction of justice," it must include as elements both (1) the actus reus of an "active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice," and (2) the mens rea of a "specific intent to interfere with the process of justice." *Id.* at 893; *see also Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1086 (9th Cir. 2008).

A threshold question is the appropriate level of deference we should accord the BIA's interpretation. In general, to the extent that a legal question requires us to construe state or federal criminal laws, we owe no deference to the BIA, and our review is *de novo*. *See Santos v. Gonzales*, 436 F.3d 323, 325 (2d Cir. 2006) (per curiam); *Mugalli*, 258 F.3d at 55 ("[W]here the BIA is interpreting state or federal criminal laws, we must review its decision *de novo* because the BIA is not charged with administration of these laws.") (internal quotation marks and citations omitted). It is clear, therefore, that we owe no deference to the BIA's ultimate conclusion that Higgins's conviction for witness tampering under Connecticut law qualifies as an

"offense relating to obstruction of justice." *See Mugalli*, 258 F.3d at 56 (deferring to the BIA's construction of the term "attempt" as used in the INA, but declining to defer to the BIA's conclusion that a conviction under a federal criminal statute necessarily constituted an "attempt" as the BIA had defined it).

A more difficult question, however, is whether we owe deference to the BIA's interpretation of the INA's key phrase, "relating to obstruction of justice." In general, pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), reviewing courts are required "to defer to an agency's interpretation of the statute it administers when the intent of Congress is unclear and the agency's determination is reasonable." *Sui v. INS*, 250 F.3d 105, 112 (2d Cir. 2001). To determine whether deference is appropriate, we conduct the familiar two-step *Chevron* analysis:

> At *Chevron* step one, we consider *de novo* whether Congress has clearly spoken to the question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary. . . . If the statutory language is ambiguous, however, we resort first to canons of statutory construction, and, if the statutory meaning remains ambiguous, to legislative history, to see if these interpretive clues clearly reveal Congress's intent.
>
> If we determine that Congress has not directly addressed the precise question at issue, we proceed to *Chevron* step two, which instructs us to defer to an agency's interpretation of the statute, so long as it is reasonable. While unpublished BIA decisions do not constitute agency interpretations of law warranting *Chevron* deference, where, as in this case, the challenged unpublished decision relies on a binding published decision, *Chevron* deference will extend to that earlier decision's reasonable resolution of statutory ambiguity.

*Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007) (internal quotation marks, citations, and alterations omitted).

There is a circuit split on the question of whether deference is owed to the BIA's reasoning in *Espinoza-Gonzalez*. On the one hand, the Fifth and Ninth Circuits have both concluded that deference is warranted. In *Alwan v. Ashcroft*, 388 F.3d 507 (5th Cir. 2004), the Fifth Circuit held that a conviction for contempt of court in violation of 18 U.S.C. § 401(3) constitutes an "offense relating to obstruction of justice." *Id.* at 508, 514. In so holding, the Fifth Circuit concluded that it was obliged to accord *Chevron* deference to the BIA and therefore reviewed its decision only to determine whether it represented a "permissible construction of the language of the INA." *Id.* at 510, 514 (internal quotation marks omitted). Similarly, in *Renteria-Morales v. Mukasey*, 551 F.3d 1076 (9th Cir. 2008), the Ninth Circuit concluded that "[b]ecause § 1101(a)(43) is part of the INA, we must defer to the BIA's articulation of the generic federal definition if the statute is silent or ambiguous with respect to the specific issue before the agency and the BIA's interpretation is based on a permissible construction of the statute." *Id.* at 1081 (internal quotation marks omitted). Determining that the INA does not define the phrase "offense relating to obstruction of justice," the Ninth Circuit deferred to the BIA's decision in *Espinoza-Gonzalez* and, employing the BIA's reasoning in that case, concluded that a conviction for "failure to appear" under 18 U.S.C. § 3146 is categorically an "offense relating to obstruction of justice" under Section 1101(a)(43)(S).[1] *Id.* at 1086, 1089.

---

[1] The Ninth Circuit has applied the same analysis in two other cases following its decision in *Renteria-Morales*. *See Salazar-Luviano v. Mukasey*, 551 F.3d 857, 862 (9th Cir. 2008) (holding that aiding and abetting an attempted escape from custody in violation of 18 U.S.C. § 751 does not qualify as an aggravated felony under Section 1101(a)(43)(S) because "a violation of 18 U.S.C. § 751 does not require the existence of a pending judicial proceeding, much less knowledge of or specific intent to obstruct such a proceeding") (footnote omitted); *Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1162 (9th Cir. 2011) (holding that rendering criminal assistance in the second degree, a misdemeanor in violation of Washington Revised Code § 9A.76.080, does not constitute an aggravated felony under the INA because the Washington

-10-

The Third Circuit, however, has declined to defer to the BIA's reasoning.  In *Denis v. Att'y Gen. of U.S.*, 633 F.3d 201 (3d Cir. 2011), the Third Circuit considered whether petitioner's conviction for tampering with physical evidence in violation of New York Penal Law ("NYPL") § 215.40(2) constitutes a crime "relating to obstruction of justice."  *Id.* at 203-04.  In answering this question in the affirmative, the Third Circuit reasoned that interpreting the phrase "relating to obstruction of justice" does not "present an obscure ambiguity or a matter committed to agency discretion," but rather requires courts to construe "two discrete phrases -- 'relating to' and 'obstruction of justice' -- both of which are capable of definition."  *Id.* at 209.  With respect to the latter, the Third Circuit concluded that courts can "easily determine the types of conduct Congress intended the phrase to encompass" by referring to the "obstruction of justice" offenses listed under Title 18 of the United States Code.  *Id.*  Indeed, the Third Circuit reasoned that "construction of the criminal provisions in Title 18 is a task outside the BIA's special competence and congressional delegation, while it is very much a part of this Court's competence."  *Id.* (internal quotation marks omitted).  Further, the Third Circuit noted that it had previously "discussed the meaning of the phrase 'relating to' in Section 1101(a)(43) [of Title 8, Section101 of the INA], observing that the phrase is to be read expansively and 'must not be strictly confined to its narrowest meaning.'"  *Id.* (quoting *Drakes v. Zimski*, 240 F.3d 246, 249 (3d Cir. 2001)).  Accordingly, the Third Circuit concluded that it owed no deference to the BIA's

statute "criminalizes conduct falling outside the bounds of the generic federal obstruction of justice crime as defined by *Espinoza-Gonzalez* [in that] it does not require that defendant commit an act involving either active interference with *proceedings of a tribunal or investigation*, or action or threat of action against those who would cooperate with the process of justice") (internal quotation marks omitted) (emphasis in original).

-11-

reasoning and proceeded to review the issue *de novo*. Having done so, the Third Circuit arrived at a far broader interpretation of the phrase "relating to obstruction of justice" than the one formulated by the BIA, concluding that it would be appropriate to "survey the interrelationship" between the crime at issue and the crimes enumerated in the obstruction of justice section of Title 18 and "apply the phrase 'relating to' broadly, seeking a logical or causal connection." *Denis*, 633 F.3d at 212.

This circuit split raises questions regarding the appropriate level of deference to accord the BIA's decision in *Espinoza-Gonzalez*; in particular, it poses the issue of what deference to accord an agency's interpretation of the statute it is charged with administering when that interpretation is itself based on the agency's construction of federal criminal statutes. We need not definitively resolve these questions today, however. Because the Third Circuit's interpretation of the phrase "relating to obstruction of justice" is broader than the one adopted by the BIA, any crime qualifying as an "offense relating to obstruction of justice" under the BIA's definition will necessarily constitute an "offense relating to obstruction of justice" under the Third Circuit's reasoning as well. Consequently, because we conclude, for the reasons explained below, that a conviction for witness tampering under CGS § 53a-151 constitutes an "offense relating to obstruction of justice" even under the BIA's more restrictive definition, we need not definitively decide whether deference to the BIA's decision in *Espinoza-Gonzalez* is required.

## III. Connecticut General Statutes § 53a-151

Adopting for now the BIA's interpretation and applying the categorical approach, we must consider whether CGS § 53a-151(a) includes as elements the requisite actus reus and mens rea. The statute provides:

Sec. 53a-151. Tampering with a witness: Class C felony.

(a) A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding.

*Id.*

From the plain language of the statute, it is apparent that CGS § 53a-151 clearly includes the requisite actus reus: an "active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice." *Espinoza-Gonzalez*, 22 I. & N. Dec. at 893. Moreover, the analogous federal "obstruction of justice" statute prohibits "[t]ampering with a witness, victim, or an informant" in strikingly similar language:

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades[2] another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
  (1) influence, delay, or prevent the testimony of any person in an official proceeding;
  (2) cause or induce any person to--
    (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
    (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
    (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
    (D) be absent from an official proceeding to which such person has been summoned by legal process;
. . .
shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512. Both the federal and Connecticut statutes criminalize the act of "induc[ing]"

---

[2]We have previously interpreted "corruptly persuades" to mean that "the government must prove that the defendant's attempts to persuade were motivated by an improper purpose." *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996).

or attempting to "induce" another person to "withhold testimony" or testify falsely. They also prohibit inducing a witness to either "evade" or "elude" "legal process," or to "absent" himself from an "official proceeding." Additionally, both statutes require a nexus to an official proceeding. *Compare Arthur Andersen LLP v. United States*, 544 U.S. 696, 707-08 (2005) (construing 18 U.S.C. § 1512 to require a "nexus" between the obstructive act and the proceeding), *with* CGS § 53a-151 (specifically requiring a "belie[f] that an official proceeding is pending or about to be instituted"). Accordingly, it is clear that CGS § 53a-151 satisfies the actus reus element of an "offense relating to obstruction of justice" -- indeed, Higgins does not appear to argue otherwise.

CGS § 53a-151 also includes the requisite mens rea: the "specific intent to interfere with the process of justice." *Espinoza-Gonzalez*, 22 I. & N. Dec. at 893. By its terms, CGS § 53a-151 provides that "[a] person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely." The Connecticut Supreme Court has explained that this text contains an "implicit" intent requirement:

> The language of § 53a-151 plainly warns potential perpetrators that the statute applies to any conduct that is intended to prompt a witness to testify falsely or to refrain from testifying in an official proceeding that the perpetrator believes to be pending or imminent. The legislature's unqualified use of the word "induce" clearly informs persons of ordinary intelligence that any conduct, whether it be physical or verbal, can potentially give rise to criminal liability. *Although the statute does not expressly mandate that the perpetrator intend to cause the witness to alter or withhold his testimony, this implicit requirement is apparent when the statute is read as a whole.* By limiting the statute's application to situations where the perpetrator believes that an official proceeding is pending or about to be instituted, the legislature indicated that it did not envisage outlawing conduct that inadvertently convinces a witness to testify falsely or to refuse to testify. The legislature's choice of the verb "induce" connotes a volitional component of the crime of tampering that would have been absent had it

-14-

> employed a more neutral verb such as "cause." Furthermore, the statute's
> application to unsuccessful, as well as successful, attempts to induce a witness to
> render false testimony supports our conclusion that the statute focuses on the
> mental state of the perpetrator to distinguish culpable conduct from innocent
> conduct.

*State v. Cavallo*, 200 Conn. 664, 668-69 (1986) (emphasis added) (internal citations omitted);

*see also id.* at 672 ("[A] defendant is guilty of tampering with a witness only if he intends that

his conduct directly cause a particular witness to testify falsely or to refrain from testifying at

all."). Further, Connecticut juries receive the following explicit instructions regarding the

specific intent requirement under CGS § 53a-151: "It is sufficient if the defendant specifically

intended by (his/her) conduct to cause a particular witness to testify falsely or to refrain from

testifying at all. A person acts 'intentionally' with respect to a result when (his/her) conscious

objective is to cause such result." Conn. Crim. Jury Instructions § 4.5-3 (Nov. 1, 2008).

Higgins maintains, however, that CGS § 53a-151 cannot qualify as an "offense relating to

obstruction of justice" because CGS § 53a-151, unlike its federal counterpart, does not include a

specific provision clarifying that, in a prosecution for witness tampering, "it is an affirmative

defense, as to which the defendant has the burden of proof by a preponderance of the evidence,

that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to

encourage, induce, or cause the other person to testify truthfully." 18 U.S.C. § 1512(e). This

argument is unavailing. The Connecticut statute criminalizes only the act of inducing or

attempting to induce a witness to testify "falsely" or to "withhold testimony." CGS §

53a-151(a). Accordingly, if a Connecticut jury finds a defendant guilty under the statute, it

necessarily determined that the defendant was *not* encouraging the witness to testify truthfully.

Moreover, because the State of Connecticut is required to prove, as part of its case in chief, that

the defendant sought to induce a witness to testify falsely or to withhold testimony, the Connecticut statute is actually *more* protective of the defendant than the federal statute, which places the burden of proof on the defendant to show that his intention was to encourage the other person to testify truthfully. *See* 18 U.S.C. § 1512(e) (requiring the defendant to prove the affirmative defense by a preponderance of the evidence).

Higgins' principal remaining arguments -- that his conviction for witness tampering is inconsistent with his acquittal on the underlying sexual assault charges and that he did not, in fact, "obstruct justice" -- are easily dismissed because they amount to nothing more than collateral attacks on his prior conviction. We have repeatedly held that such collateral attacks on state convictions are not available in a petition for review of the agency's final order of removal. *See Arriaga v. Mukasey*, 521 F.3d 219, 224 (2d Cir. 2008) ("[C]ollateral attack on a state criminal conviction is not available on a petition to review the BIA's removal decision.") (citing *Abimbola v. Ashcroft*, 378 F.3d 173, 181 (2d Cir. 2004)).

## CONCLUSION

We have considered Higgins's remaining arguments and find them to be without merit. Because CGS § 53a-151 fulfills the elements of the generic offense of "obstruction of justice," we conclude that a conviction under CGS § 53a-151 is categorically "an offense relating to obstruction of justice" under 8 U.S.C. § 1101(a)(43). Thus, the BIA did not err in affirming the IJ's holding that Higgins's conviction for witness tampering under Connecticut state law qualified as an aggravated felony, and we therefore **DISMISS** the petition for review.

KATZMANN, *Circuit Judge*, concurring:

I concur in the Court's judgment and agree with its reasoning. I write separately simply to add my views on the question the Court's opinion does not reach, namely, whether we owe deference to the BIA's opinion in *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (BIA 1999).

In *Espinoza-Gonzalez*, the BIA interpreted the meaning of 8 U.S.C. § 1101(a)(43)(S), a definitional section of the statute the BIA is charged with administering: the Immigration and Nationality Act ("INA"). When reviewing the agency's interpretation of the statute it administers, we employ the familiar two step inquiry set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984). At *Chevron* step one, we first ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

In this case, 8 U.S.C. § 1101(a)(43)(S) does not define the term "relating to obstruction of justice" by reference to state law or to another portion of the United States Code; in fact, Section 1101(a)(43)(S) does not define the phrase at all. The absence of a definition is particularly significant here because many of the aggravated felonies listed in Section 1101(a)(43) are, in fact, defined by references to the United States Code. For example, the term "illicit trafficking in a controlled substance" is defined by reference to Section 102 of the Controlled Substances Act, 21 U.S.C. § 802. *See* 8 U.S.C. § 1101(a)(43)(B). Similarly, the subsection regarding "illicit trafficking in firearms or destructive devices . . . or in explosive

1

materials" specifically defines "destructive devices" by reference to 18 U.S.C. § 921, and

"explosive materials" by reference to 18 U.S.C. § 841(c). Indeed, many of the offenses listed

under 8 U.S.C. § 1101(a)(43) are described *first* by reference to provisions in the United States

Code, and only later by parenthetical descriptions of the general nature of the crime. *See, e.g.*, 8

U.S.C. § 1101(a)(43) (H) (listing as an aggravated felony "an offense described in section 875,

876, 877, or 1202 of Title 18[, United States Code] (relating to the demand for or receipt of

ransom)").

Only a minority of the subsections under 8 U.S.C. § 1101(a)(43) contain no description

or elaboration whatsoever. In addition to 8 U.S.C. § 1101(a)(43)(S), another undefined

subsection is 8 U.S.C. § 1101(a)(43)(A), which specifies that the crimes of "murder, rape, [and]

sexual abuse of a minor" are aggravated felonies. In interpreting the phrase "sexual abuse of a

minor," the Third Circuit observed:

> Section 1101(a)(43)(A) is devoid of any descriptive or restrictive parentheticals
> and simply lists the crimes of "murder, rape, or sexual abuse of a minor" without
> further definition. When contrasted with the structure of the statute as a whole,
> such an omission is instructive, for it is typically understood that the legislature
> proceeds purposefully when it inserts specific language in one statutory section
> but omits it in another. In other § 1101(a)(43) sections, Congress specified certain
> aggravated felonies by cross-referencing criminal statutory provisions. The fact
> that it did not do so with "sexual abuse of a minor" indicates that it intended that
> the phrase be given its common law definition. Alternatively, Congress may have
> intended for the BIA to utilize its expertise to define the phrase, or it may have
> inserted the generic phrase because the definition of sexual abuse of a minor
> varies by state and federal law. In any case, the pertinent point is that the precise
> definition of the phrase is most assuredly not clear and unambiguous.

*Restrepo v. Att'y Gen. of U.S.*, 617 F.3d 787, 793 (3d Cir. 2010) (internal citations and footnote

omitted).

So too in this case, the INA is silent on the meaning of "relating to obstruction of justice." It includes no indication of what specific crimes, or even what types of crimes, may qualify as "offenses relating to obstruction of justice." Nor does the INA specify where one should look for interpretive guidance. Thus, because the INA is silent with respect to the specific issue at hand, I believe the statute is most assuredly not "clear and unambiguous," *see, e.g.*, *Bodansky v. Fifth on the Park Condo, LLC*, 635 F.3d 75, 86 (2d Cir. 2011), and that we must proceed to *Chevron* step two.

At *Chevron* step two, we must consider whether the agency's resolution of the ambiguity is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 843. To uphold the BIA's interpretation, we "need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n.11. "Instead, we will defer to the agency's interpretation as long as that interpretation is reasonable." *Xia Fan Huang v. Holder*, 591 F.3d 124, 129 (2d Cir. 2010) (internal quotation marks omitted). In this case, I see nothing unreasonable in BIA's decision to derive the definition of "obstruction of justice" from the series of federal offenses collectively entitled "Obstruction of Justice" in the United States Code. As the BIA explained, "Congress did not adopt a generic descriptive phrase such as 'obstructing justice' or 'obstruct justice,' but chose instead a term of art utilized in the United States Code to designate a specific list of crimes." *Espinoza-Gonzalez*, 22 I. & N. at 893. It was therefore logical for the BIA to look to this list of crimes to discern Congress's intent.

That being said, however, there is no reason to defer to the BIA's interpretation of the federal obstruction-of-justice offenses. It is well established that "analysis of a federal criminal

3

statute . . . [is] beyond the BIA's administrative responsibility and expertise." *Mugalli v. Ashcroft*, 258 F.3d 52, 56 (2d Cir. 2001). Accordingly, I believe we must review *de novo* the BIA's conclusion that "[i]n general, the obstruction of justice offenses listed in 18 U.S.C. §§ 1501-1518 have as an element interference with the proceedings of a tribunal or require an intent to harm or retaliate against others who cooperate in the process of justice or might otherwise so cooperate." 22 I. & N. at 892.

On the question of deference, therefore, I would adopt an approach somewhere in between the two adopted by our sister circuits. Unlike the Third Circuit, I believe the statute is silent on the meaning of 8 U.S.C. § 1101(a)(43)(S), and that we must therefore defer to the BIA's construction of the statute, to the extent that it is within the domain of the agency's special expertise in immigration law, as long as it is reasonable. Unlike the Fifth and Ninth Circuits, however, I would not simply defer to the BIA's interpretation of the federal obstruction of justice statues, over which the BIA has no special expertise, but rather review them *de novo*.