STATE OF CONNECTICUT *v.* JOHN CAVALLO
(12632)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and KINNEY, Js.

Argued June 5—decision released August 5, 1986

*William J. St. John, Jr.,* for the appellant (defendant).

*David S. Shepack,* deputy assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this case is whether the Connecticut statute that prohibits tampering with witnesses is unconstitutionally vague. After a jury trial, the defendant, John Cavallo, was convicted of tampering with a witness in violation of General Statutes § 53a-151. He appeals from this judgment.

The jury could reasonably have found the following facts. On several occasions during the early months of 1984, the defendant, a Watertown police officer, allowed a seventeen year old woman to accompany him in his police cruiser. The couple often drank alcohol while together in the cruiser. On April 17, 1984, the chief of the Watertown police department, after learning of the defendant's activities, discharged the defendant from the police force for violating department policies against carrying civilians and using intoxicating liquors in police vehicles. The defendant denied the police chief's allegations and, through his union representative, notified the department that he intended to bring the matter to arbitration.

On April 18, the defendant met with the woman he had entertained in the cruiser and informed her of his dismissal. He told her that if investigators questioned her about their relationship, she should tell them that she had never been in the defendant's police cruiser and should deny any knowledge of the defendant's social use of the vehicle. On April 24, the defendant called the woman in Florida, where she was vacationing, and reiterated these instructions.[1] On May 1, after the woman had returned to Connecticut, the defendant again implored her to tell investigators nothing. During the conversation, he informed her that he was going to sue the town and promised her that he would "reimburse" from the proceeds of the suit anyone who "stuck by him."

---

[1] The defendant also informed the woman that he had just been arrested for tampering with another young woman who was also a potential witness.

When police investigators questioned the woman on May 2, she claimed that she had never been in the defendant's police cruiser and that the defendant was guilty of no misconduct. After the session had ended, the defendant called the woman to determine whether she had divulged any incriminating information and to request that she continue to remain silent about their use of the police cruiser.

The defendant initiated arbitration proceedings on May 14, 1984. On July 10, 1984, the woman gave police investigators a full account of her visits with the defendant in his cruiser and informed them of the defendant's attempts to persuade her to deny that these activities had ever occurred.

On appeal, the defendant raises three claims of error. He argues that: (1) General Statutes § 53a-151 is void for vagueness; (2) the state produced insufficient evidence at trial to support his conviction; and (3) the sentence imposed by the trial court is excessive. We find no error.

I

In his first claim of error, the defendant mounts a twofold attack on the validity of General Statutes § 53a-151[2] under the United States constitution.[3] He initially contends that the statute is impermissibly

---

[2] "[General Statutes] Sec. 53a-151. TAMPERING WITH A WITNESS: CLASS D FELONY. (a) A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding.

"(b) Tampering with a witness is a class D felony."

[3] At oral argument, the defendant claimed that General Statutes § 53a-151 is also invalid under the Connecticut constitution. Because he has not briefed this issue, we do not consider it here. *Bieluch* v. *Bieluch,* 199 Conn. 550, 555 n.5, 509 A.2d 8 (1986); *State* v. *Wright,* 197 Conn. 588, 595, 500 A.2d 547 (1985).

vague in its application to the facts of this case. He then argues that, even if the statute is valid as applied in this case, it is unconstitutionally vague on its face and should not be enforced. We are persuaded by neither of these contentions.

A

The defendant claims that, because General Statutes § 53a-151 does not clearly define as illegal his conduct in this case, the statute is void for vagueness as applied to him. We disagree.

The standard that we use to determine whether a statute is void for vagueness under the fourteenth amendment to the United States constitution is well established. " 'A statute . . . [that] forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. *Baggett* v. *Bullitt,* 377 U.S. 360, 367, 84 S. Ct. 1316, 12 L. Ed. 2d 377 [1964]; *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 [1926]. Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly.' *Mitchell* v. *King,* 169 Conn. 140, 142–43, 363 A.2d 68 [1975]; *State* v. *Hurliman,* 143 Conn. 502, 509, 123 A.2d 767 [1956]." *State* v. *Chetcuti,* 173 Conn. 165, 167, 377 A.2d 263 (1977); see *Kolender* v. *Lawson,* 461 U.S. 352, 357–58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); *State* v. *Perruccio,* 192 Conn. 154, 158, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984); *State* v. *Pickering,* 180 Conn. 54, 60, 428 A.2d 322 (1980).

As applied to the defendant in this case, the language of General Statutes § 53a-151 satisfies this test. According to the statute, "[a] person is guilty of tampering with a witness if, believing that an official proceeding

is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." The defendant does not challenge the precision of the terms "witness" and "official proceeding," which are defined in General Statutes § 53a-146.[4] Instead, he claims that the statute's flaw lies in its failure to define the term "induces or attempts to induce." Ambiguity in this phrase, he argues, made it impossible for him to have known in advance whether the statute proscribed his conduct in this case. We reject this contention.

The language of § 53a-151 plainly warns potential perpetrators that the statute applies to any conduct that is intended to prompt a witness to testify falsely or to refrain from testifying in an official proceeding that the perpetrator believes to be pending or imminent. The legislature's unqualified use of the word "induce" clearly informs persons of ordinary intelligence that any conduct, whether it be physical or verbal, can potentially give rise to criminal liability. Although the statute does not expressly mandate that the perpetrator intend to cause the witness to alter or withhold his testimony, this implicit requirement is apparent when the statute is read as a whole. See *Norwich* v. *Silverberg,* 200 Conn. 367, 371, 511 A.2d 336 (1986); *Grodis* v. *Burns,* 190 Conn. 39, 44, 459 A.2d 994 (1983); *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 159–60, 454 A.2d 1258 (1983). By limiting

---

[4] "[General Statutes] Sec. 53a-146. DEFINITIONS. For purposes of [General Statutes §§ 53a-146 through 53a-167c] (1) An 'official proceeding' is any proceeding held or which may be held before any legislative, judicial, administrative or other agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner or notary or other person taking evidence in connection with any proceeding. . . .

"(6) 'Witness' is any person summoned, or who may be summoned, to give testimony in an official proceeding."

the statute's application to situations where the perpetrator believes that an official proceeding is pending or about to be instituted, the legislature indicated that it did not envisage outlawing conduct that inadvertently convinces a witness to testify falsely or to refuse to testify. The legislature's choice of the verb "induce" connotes a volitional component of the crime of tampering that would have been absent had it employed a more neutral verb such as "cause." Furthermore, the statute's application to unsuccessful, as well as successful, attempts to induce a witness to render false testimony supports our conclusion that the statute focuses on the mental state of the perpetrator to distinguish culpable conduct from innocent conduct.[5] See II A.L.I., Model Penal Code and Commentaries (1980) § 241.6, comment, pp. 166–71.

The defendant in this case repeatedly instructed a potential witness to fabricate her account of their relationship. He also apparently promised her a possible pecuniary reward for protecting him. In light of the

[5] The trial court in this case instructed the jury in accordance with our construction of § 53a-151: "The statute does not spell out what the words 'induce' or 'attempts to induce' mean. The dictionary definition is this: to induce is to prevail upon, to cause one to do or not to do something. Any means may be used so long as such means is used with the intent to prevail upon another to a course of action. Offering or giving a bribe, threatening or coercing the witness or his family are two means that suggest themselves as examples. But any means may suffice so long as it is used with the intent to influence the conduct of the witness or prospective witness.

"It is also sufficient if the defendant knowingly makes any false statements or practices any fraud or deceit with the intent to affect the testimony or conduct of a person who is a witness or may be a witness at any official proceeding. Thus, a statement such as this: Don't testify on behalf of John Doe because he's a crook, is sufficient if the person making such a statement knows it could be false and makes it to a person who he knows is a witness or who he knows may be a witness at any official proceeding as I have defined the phrase 'official proceeding' to you.

"The inducement must be for purposes of having the witness testify falsely or withhold testimony, elude legal process summoning him to testify or having the witness absent himself from the proceeding."

statute's plain language, we cannot say that § 53a-151 did not give the defendant fair warning that this course of conduct was illegal.

B

The defendant next claims that, even if his conduct clearly falls within the proscriptions of General Statutes § 53a-151, the statute is unconstitutionally vague on its face and should not be enforced.[6] We disagree.

Before reaching the merits on this issue, we must, as a preliminary matter, determine whether the defendant has standing to raise this claim. Ordinarily, when a litigant challenges a statute as void for vagueness under the United States constitution, we confine our inquiry to the statute's applicability to the facts of the case. *State* v. *Perruccio,* supra, 158; *State* v. *Eason,* 192 Conn. 37, 46, 470 A.2d 688 (1984). Where, however, a challenged statute, if vague, could intrude on fundamental constitutional guarantees such as first amendment rights, we will refuse to enforce the statute if we find that it is unconstitutionally vague on its face.[7] *State* v. *Pickering,* supra, 57, 57 n.3; see *Smith* v. *Goguen,* 415 U.S. 566, 573, 573 n.10, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *Grayned* v. *Rockford,* 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *Smith* v. *California,* 361 U.S. 147, 151, 80 S. Ct. 215, 4 L. Ed. 2d 205 (1959). In this case, General Statutes § 53a-151 applies to inducement, which is a communica-

[6] At oral argument, the defendant purported to bring this claim under the Connecticut constitution, as well as under the United States constitution. Because he did not brief the state constitutional issue, we decline to review it. See footnote 3, supra.

[7] The state contends that this claim is unreviewable because the defendant failed to raise it at trial. Our review of the record indicates that the defendant filed posttrial motions with the trial court, claiming that § 53a-151 is void for vagueness. In arguing before the trial court in support of these motions, the defendant alluded to the statute's vagueness on its face as well as to its ambiguity in its application to him. We deem his action sufficient to preserve both issues for appeal.

tive form of conduct. Because such a statute could, if drafted ambiguously, impinge upon rights of expression protected by the first amendment, we will review the defendant's claim that the statute is facially invalid.

Our inquiry into the facial validity of a statute focuses on whether indefiniteness in the meaning of the statute could reasonably create uncertainty over whether the statute prohibits expression that is protected by the first amendment. Such ambiguity is unconstitutional for two reasons: (1) it may deter individuals from exercising their first amendment freedoms for fear of incurring criminal liability; and (2) it vests enforcement officials with undue discretion to interfere with the right to freedom of speech. See *Smith* v. *Goguen,* supra, 573–76; *Grayned* v. *Rockford,* supra, 109; *Baggett* v. *Bullitt,* supra, 372; *State* v. *Pickering,* supra, 57–58 n.3. Consequently, we carefully scrutinize a statute that is under attack to determine whether its language, as we have construed it, reasonably warrants such uncertainty among members of the public. We will not enforce a statute that could exert such a chilling effect on first amendment liberties. See *Smith* v. *Goguen,* supra; *Grayned* v. *Rockford,* supra; *Baggett* v. *Bullitt,* supra.

The defendant in this case claims that General Statutes § 53a-151 is facially void for vagueness because it furnishes the public no guidance in determining the scope of its application to protected speech. He reasons that, since the expression of one person's ideas may readily influence the conduct of others, a person could be exposed to criminal liability under General Statutes § 53a-151 any time something he says inadvertently causes a witness to testify falsely or refuse to testify. This threat, he claims, can reasonably be expected to inhibit members of the public in exercising their first amendment rights.

The defendant's argument, however, assumes that tampering with a witness is a strict liability offense. We have held today that a defendant is guilty of tampering with a witness only if he intends that his conduct directly cause a particular witness to testify falsely or to refrain from testifying at all. So interpreted, § 53a-151 warns the public that it applies only to conduct intentionally undertaken to undermine the veracity of the testimony given by a witness. Members of the public therefore have no basis for concern that they might be subject to prosecution when their statements unwittingly cause a witness to testify falsely. As long as intent is a necessary element of the crime under § 53a-151, which penalizes only verbal acts relating to a specific pending prosecution, the statute casts no chilling effect on general exhortations concerning cooperation with judicial proceedings. See *Bond* v. *Floyd,* 385 U.S. 116, 134, 87 S. Ct. 339, 17 L. Ed. 2d 235 (1966). Accordingly, it is not unconstitutionally vague on its face. See *State* v. *Carlsen,* 638 P.2d 512, 515 (Utah), cert. denied, 455 U.S. 958, 102 S. Ct. 1469, 71 L. Ed. 2d 676 (1981); *State* v. *Stroh,* 91 Wash. 2d 580, 583–86, 588 P.2d 1182 (1979); see also *Kilgus* v. *Cunningham,* 602 F. Sup. 735, 738–39, aff'd without opinion, 782 F.2d 1025 (1st Cir. 1985); *State* v. *Woods,* 716 P.2d 624, 627–28 (Mont. 1986); *People* v. *Esteves,* 85 Misc. 2d 217, 219–20, 378 N.Y.S.2d 920 (1976).

## II

The defendant next contends that the trial court erred in denying his motion for acquittal because the evidence adduced at trial was insufficient to permit the jury to reach a verdict of guilty. Apparently conceding that the state presented evidence that was probative of each element of the crime of tampering with a witness, he claims that the jury could not reasonably have found him guilty because the evidence against him

lacked the credibility and weight necessary to establish his guilt beyond a reasonable doubt. We disagree.

The defendant's argument reflects a misunderstanding of the scope of our review of the sufficiency of the evidence underlying a conviction. On appeal, we do not attempt to weigh the credibility of evidence offered at trial, nor do we purport to substitute our judgment for that of the jury. Instead, our review consists of a two-step process in which we construe the evidence presented at trial in a light most favorable to sustaining the verdict; *State* v. *Vinal,* 198 Conn. 644, 657–58, 504 A.2d 1364 (1986); *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985); *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); and then determine whether the jury could reasonably have found, " 'upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985), quoting *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984).

A review of the record in this case reveals that the state presented substantial evidence to satisfy its burden of proving each element of the offense charged. The state introduced testimony that the defendant had repeatedly instructed a woman to give a false account of her activities with the defendant in his police cruiser. It also introduced ample evidence to convince a reasonable finder of fact that, at the time of his attempts to so induce the woman, the defendant had known that an arbitration proceeding would soon be pending and that, during the hearing, the woman would probably be called to testify about her meetings with the defendant in the cruiser. From this evidence, the jury could reasonably have inferred that the defendant intended

to induce the woman to testify falsely. Because the jury could have found the defendant guilty beyond a reasonable doubt if it found the state's evidence credible, the trial court correctly denied the defendant's motion for acquittal.

## III

The defendant's final claim is that the sentence imposed by the trial court is excessive. The trial court sentenced the defendant to a term of five years imprisonment with execution to be suspended after eighteen months served and five years probation. The defendant concedes that this sentence falls within the sentencing parameters set by General Statutes § 53a-151 (b).[8] He argues only that, in light of his record as a police officer, the nature of his offense, and the recommendation of leniency given by the author of his presentence investigation report, the trial court abused its discretion by ordering the defendant to serve a sentence of this length. We do not review this claim because the defendant has not followed the proper procedure for seeking reduction of his sentence.

General Statutes § 53a-39[9] and Practice Book § 934[10] require that convicted offenders who receive definite

[8] General Statutes § 53a-151 (b) defines tampering with a witness as a class D felony. General Statutes § 53a-35a authorizes the trial court to sentence a defendant convicted of a class D felony to a term of imprisonment of "not less than one year nor more than five years . . . ."

[9] "[General Statutes] Sec. 53a-39. REDUCTION OF DEFINITE SENTENCE OF THREE YEARS OR LESS. DISCHARGE OF DEFENDANT. At any time during the period of a definite sentence of three years or less, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which he could have been originally sentenced. At any time during the period of a definite sentence of at least two years but not more than five years, the sentencing court or judge may, after hearing and for good cause shown, order the defendant discharged on intensive probation in accordance with subsection (b) of section 54-105 for a period of at least one year."

[10] "[Practice Book] Sec. 934. DEFINITE SENTENCE

"At any time during the period of a definite sentence of three years or less, the judicial authority may, after a hearing and for good cause shown,

sentences of three years imprisonment or less, and who seek to have their sentences reduced, must direct their requests for relief to the sentencing court.[11] The record in this case contains no indication that the defendant filed such a motion with the trial court and the defendant has made no such claim. Consequently, because the defendant has failed to comply with a prerequisite to appellate review of the length of his sentence, we do not decide whether the trial court abused its discretion in this case.

There is no error.

In this opinion the other justices concurred.

reduce the sentence or order the defendant discharged or released on probation or on a conditional discharge for a period not to exceed that to which he could have been sentenced originally."

[11] Offenders who receive definite sentences of three years or more may apply for review of their sentences under General Statutes § 51-195, which provides that "[a]ny person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. Upon imposition of sentence or at the time of revocation of such suspended sentence, the clerk shall give written notice to the person sentenced of his right to make such a request. Such notice shall include a statement that review of the sentence may result in decrease or increase of the term within the limits fixed by law. A form for making such application shall accompany the notice. The clerk shall forthwith transmit such application to the review division and shall notify the judge who imposed the sentence. Such judge may transmit to the review division a statement of his reasons for imposing the sentence, and shall transmit such a statement within seven days if requested to do so by the review division. The filing of an application for review shall not stay the execution of the sentence."