******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., with whom McDONALD, J., joins, dissenting. I respectfully dissent because I conclude that the Appellate Court incorrectly concluded that the evidence was sufficient to convict the defendant, Jasmine Lamantia, of tampering with a witness in violation of General Statutes § 53a-151 (a). I do not consider this a case that only boils down to whether the jury drew permissible inferences from the evidence or engaged in improper speculation, however. Rather, in my view, recent precedents of this court involving two statutes that criminalize offenses against the administration of justice, only one of which the state charged the defendant with violating, along with recent legislative action in response to those precedents, illuminate the legislative intent and, to me, make clear that the defendant's conduct does not fall within the conduct that the legislature sought to criminalize. Specifically, I believe that, to properly examine how § 53a-151 (a) applies to the present case, we must consider, pursuant to General Statutes § 1-2z, that statute's relationship to General Statutes § 53a-155, which criminalizes tampering with physical evidence. Even more specifically, I believe that how the legislature has responded to our case law leaves an ambiguity that requires consideration of pertinent legislative history. That consideration of the legislative history and our case law leads me to conclude that the legislature did not intend to criminalize the defendant's conduct in the present case. I therefore respectfully dissent.

Section 53a-151 (a) criminalizes "tampering with a witness if, believing that an official proceeding is pending or about to be instituted, [an individual] induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." The allegation in this case is that the defendant attempted to induce her boyfriend, Jason Rajewski, "to withhold testimony and to testify falsely."[1] That allegation arises from an altercation that took place between Rajewski and two other men. Trooper Jonathan Baker of the state police investigated the altercation as a possible assault. The defendant was neither a participant in the altercation nor a witness to it. As the case is presented to us, however, the parties agree that the defendant in fact sought to induce Rajewski to lie to Baker during the course of his investigation. Specifically, she sent text messages to Rajewski in which she encouraged him to have blood on his clothes when Baker arrived to investigate, to tell Baker that the victim, David Moulson, abused her, and to stick to the same story that Rajewski was already bloody when he arrived at the party from a bar fight somewhere else, all to get Baker to believe that Rajewski did not assault Moulson.

The parties disagree over whether there is sufficient evidence that the defendant, by attempting to induce Rajewski to lie during a police investigation, also intended to induce him to give false testimony or to withhold testimony on the ground that she "believ[ed] that an official proceeding [was] . . . about to be instituted . . . ."[2] General Statutes § 53a-151 (a). The state argues that a jury reasonably could have inferred that, when the defendant attempted to induce Rajewski to lie to Baker during the investigation into the incident, she also intended to induce him to "testify falsely" or to "withhold testimony" at an official proceeding that was about to be instituted. The defendant argues that, to prove she had the specific intent to induce Rajewski to give false testimony or to withhold testimony, the state would have been required to "prove a chain of likelihoods." According to the defendant, that chain of likelihoods would have required the state to present evidence that she thought that the police would charge Rajewski with a crime, that an official proceeding would be held, and that Rajewski would testify at an official proceeding. On the basis of this court's interpretations of §§ 53a-151 (a) and 53a-155, and the legislative history surrounding those statutes, I agree with the defendant that the legislature did not intend to criminalize her conduct in the present case, in which the chain of likelihoods necessary to satisfy the statutory requirements is so tenuous.

The majority explains that the state had to demonstrate beyond a reasonable doubt the two elements of the crime: (1) the defendant's belief that an official proceeding was about to be instituted, and (2) the defendant's attempt to induce Rajewski to testify falsely at an official proceeding.

I

I begin with the first element—the defendant's belief that an official proceeding was about to be instituted. Our legislature has defined an "official proceeding" as "any proceeding held or which may be held before any legislative, judicial, administrative or other agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner or notary or other person taking evidence in connection with any proceeding." General Statutes § 53a-146 (1). Unlike § 241.6 (1) of the Model Penal Code,[3] our witness tampering statute, § 53a-151 (a), does not explicitly extend to interference with an "investigation . . . ." *State* v. *Ortiz*, 312 Conn. 551, 568, 93 A.3d 1128 (2014). This is not the first time we have been confronted with the question of under what circumstances a jury may find that, at the investigative stage, a defendant subjectively believes that an official proceeding is "about to be instituted . . . ." General Statutes § 53a-151 (a). Therefore, "we do not write on a clean slate, but are bound by our previous judicial interpretations of the

language and the purpose of the statute." *Kasica* v. *Columbia*, 309 Conn. 85, 93–94, 70 A.3d 1 (2013).

We recently analyzed § 53a-151 in *State* v. *Ortiz*, supra, 312 Conn. 555, in which the defendant was a " 'principal suspect' " in a murder investigation. During their investigation, the police contacted Kristen Quinn, the defendant's former girlfriend, who, at first, did not provide the police with any useful information and who, after the victim's remains were found, told the defendant that she was in contact with the police and did not want to be involved with him because she thought he might have had something to do with the victim's murder. Id. In the following months, however, the defendant became aware that Quinn had been speaking with the police, and he detailed for her how he had killed the victim with a knife. Id., 557. Later, still, the defendant went to Quinn's house, showed her a handgun and told her that he "had the gun for insurance if she told the cops about what he said about [the victim]." (Internal quotation marks omitted.) Id. The defendant said that, if Quinn spoke to the police, "[her] house was going to go up in smoke." (Internal quotation marks omitted.) Id. He told her "that he was going to put [her down] on [her] knees, put the gun to [her] head and scare [her] straight." (Internal quotation marks omitted.) Id. The defendant also stated that he knew where Quinn's grandparents lived. Id. A jury found the defendant guilty of tampering with a witness in violation of § 53a-151 (a), as well as other charges. Id., 553–54.

The defendant appealed to this court, and we addressed his claim that § 53a-151 does not criminalize the act of attempting to prevent someone from giving a statement to the police when no charges are pending. Id., 559. We set forth the statute's two requirements: (1) the defendant "believes that an official proceeding is pending or about to be instituted," and (2) "the defendant induces or attempts to induce a witness to engage in the proscribed conduct." Id., 562. In applying the statute's first requirement to the facts in *Ortiz*, we referred to the phrase, "about to be instituted," as "somewhat ambiguous" and sought to resolve that ambiguity by looking to our cases that interpret identical language in § 53a-155. Id., 569–70. We recognized that "the omission of 'investigation' [in § 53a-151 (a)] was intended to exclude from the scope of the statute situations in which the defendant believes that only an investigation, but not an official proceeding, is likely to occur." Id., 570.

Nevertheless, we recognized that a defendant's interference with a witness during the investigation of a crime may violate § 53a-151 (a) if there was sufficient evidence that, at the time of the interference, the defendant (1) believed that an official proceeding was pending or was about to be instituted, and (2) interfered with the witness in the investigation so as to induce

or to attempt to induce the witness to engage in the proscribed conduct (i.e., testify falsely, withhold testimony, elude legal process or absent himself from any official proceeding). Id., 560. Although attempting to induce a witness to lie to or to withhold evidence from police investigators may not always itself satisfy the subjective intent requirement of § 53a-151 (a), i.e., "believing that an official proceeding is pending or about to be instituted,"[4] we held that, under certain circumstances, a jury may infer that intent from the defendant's attempts to induce the witness to lie or to withhold that evidence. *State* v. *Ortiz*, supra, 312 Conn. 563. Applying that framework, we concluded that there was sufficient evidence that the defendant intended to induce a witness to testify falsely or to withhold testimony at an official proceeding by attempting to induce a witness to lie to the police. Specifically, we held that the jury could have inferred that, by interfering with the police investigation, the defendant intended to influence Quinn to lie during an official proceeding on the basis of evidence that the defendant had confessed to two individuals that he had killed someone, he knew Quinn was in contact with the police, and he had heard that warrants had issued for his arrest. Id., 572–73.

As we noted in *Ortiz*, § 53a-151 (a) is not the only criminal statute that punishes interference with our system of justice or that employs the phrase, "believing that an official proceeding is pending or about to be instituted . . . ." Nor is *Ortiz* the only recent decision of this court interpreting and applying that phrase. *Ortiz* was argued at the same time as *State* v. *Jordan*, 314 Conn. 354, 102 A.3d 1 (2014), although *Jordan* was decided four months after *Ortiz*. In *Jordan*, we interpreted identical language from a related statute, § 53a-155,[5] which criminalizes tampering with physical evidence, not witnesses.

Like the defendant in *Ortiz*, the defendant in *Jordan* argued that the legislature had restricted the scope of the tampering with physical evidence statute, § 53a-155, by omitting from it the word "investigation." Id., 381. In *Jordan*, a police officer had chased a bank robbery suspect who ran down a sidewalk when the officer called out to him. Id., 359. One witness testified to having seen a man who matched the description of the individual remove his jacket while running across the witness' backyard. Id., 359–60. A second witness saw the individual remove his sweatshirt while he was in her backyard, after which the individual headed to the back of her carport, where the witness' husband later found a sweatshirt that was crumpled into a ball. Id., 360. The second witness also located a dark jacket in a neighbor's trash can, and, when the police took the jacket from the trash can, they also discovered a mask, leather gloves and a shopping bag. Id. DNA analysis of the samples that the police took from all of the items

of clothing, except a sample that was taken from the collar of the jacket, included the defendant as a contributor of DNA. Id., 363. A jury found the defendant guilty of, among other crimes, tampering with physical evidence in violation of § 53a-155. Id., 364.

We "agree[d] with the defendant that the legislature restricted the scope of the tampering with physical evidence statute by omitting the word 'investigation.' We disagree[d] with the defendant, however, that [our previous case law had] improperly extend[ed] liability under the evidence tampering statute to conduct that the legislature deliberately excluded from the scope of § 53a-155." Id., 381. As in *Ortiz*, we concluded in *Jordan* that a defendant's attempt to discard evidence during the investigation of a crime may violate the evidence tampering statute, notwithstanding the omission of the word "investigation." Id., 382; see footnote 5 of this opinion. We explained in *Jordan* that the omission of the word "investigation" from the tampering with physical evidence statute did not automatically exclude all physical evidence discarded during a police investigation. *State* v. *Jordan*, supra, 314 Conn. 382. Rather, the statute's application depended on the point in time at which the defendant believed that an official proceeding probably would occur. Id. We emphasized "that it is not the existence of an investigation that is key but, rather, *whether the defendant believes* an official proceeding is pending or probable." (Emphasis added.) Id., 383.

Applying those principles in *Jordan*, we concluded that "the jury could not reasonably have concluded that the defendant believed that an official proceeding against him was probable when he discarded the evidence." Id., 385. The defendant had run within minutes of the attempted bank robbery, and there was no evidence that he believed that the police officer knew his identity or any other information connecting him to the crime. Id., 386. "[A]t that point in time, the clothing was the *only* evidence linking the defendant to the attempted bank robbery. Therefore, it would [have been] unreasonable for the jury to have inferred from the fact that the defendant absconded from the police officer that the defendant [had] believed that an official proceeding against him was probable." (Emphasis in original.) Id. We concluded that the evidence was insufficient to support the conviction of tampering with physical evidence in violation of § 53a-155. Id., 388. "Instead, the only reasonable inference from the facts . . . [was] that the defendant discarded his clothing to prevent its use in an investigation in order to escape detection and avoid being arrested by the pursuing police officer." Id., 388–89.

In both *Ortiz* and *Jordan*, therefore, we determined that, despite the omission of the term "investigation," both statutes could encompass interference with a

police investigation but only if there was proof beyond a reasonable doubt that the defendant *subjectively* "believed" that an "official proceeding [was] pending or about to be instituted," i.e., "that an official proceeding will probably occur." In *Ortiz*, we concluded that there was sufficient evidence of such a belief; in *Jordan*, we concluded that there was not.

After our decisions in *Ortiz* and *Jordan*, the legislature, in Public Acts 2015, No. 15-211, § 9 (P.A. 15-211), amended § 53a-155 but chose not to amend § 53a-151 (a). See, e.g., *Achillion Pharmaceuticals, Inc.* v. *Law*, 291 Conn. 525, 535, 970 A.2d 57 (2009) ("[t]he legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them" (internal quotation marks omitted)). I find the legislature's actions—both the enactment of new language in § 53a-155 and the lack of that language in the related statute, § 53a-151 (a)—relevant to an appropriate analysis under § 1-2z. I consider the legislature's actions even more relevant, given that, when we interpreted § 53a-151 (a) in *Ortiz*, we were guided by the language of § 53a-155, before that statute had been amended. See *State* v. *Ortiz*, supra, 312 Conn. 569–70; see also P.A. 15-211, § 9.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Callaghan* v. *Car Parts International, LLC*, 329 Conn. 564, 570–71, 188 A.3d 691 (2018). Because we have previously construed § 53a-151 (a), "we must consider its meaning in light of our prior cases interpreting the statute . . . ." Id., 571. "When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Panek*, 328 Conn. 219, 225–26, 177 A.3d 1113 (2018).

In *Ortiz*, we considered the phrase, "about to be instituted," to be "somewhat ambiguous . . . ." (Internal quotation marks omitted.) *State* v. *Ortiz*, supra, 312 Conn. 569. Even after our construction of the term in a number of cases, however, I do not find this ambiguity

entirely dispelled, given the legislature's addition of the term "investigation" in one statute, § 53a-155, and its failure to add it to the related statute at issue in the present case, § 53a-151 (a). Specifically, after the legislature's direct response to *Jordan* by amending § 53a-155, we are left with ambiguity as to how broadly or narrowly the legislature intended "official proceeding" to be construed under § 53a-151 (a). See *Amaral Bros., Inc.* v. *Dept. of Labor*, 325 Conn. 72, 89, 155 A.3d 1255 (2017) ("it is at least ambiguous whether the legislature, in amending [General Statutes] § 31-60 (b) in 1980, intended to repeal [a Department of Labor regulation]"). In my view, it is unclear whether the legislature intended the language of § 53a-151 (a)—in the absence of the term "investigation"—to apply to the interference with an investigation under circumstances such as those in the present case. Therefore, I would turn to the legislative history. In the legislative session directly following *Jordan*, the Judiciary Committee considered Raised Bill No. 1105, "An Act Concerning Minor Revisions to the Criminal Justice Statutes." Raised Bill No. 1105, 2015 Sess., §§ 9 through 11. The proposed legislation included amendments to the witness tampering statute (§ 53a-151), the witness intimidation statute (General Statutes (Rev. to 2015) § 53a-151a), and the evidence tampering statute (§ 53a-155).[6] The proposal would have added the term "investigation" to all of the statutes. See id. The amendment to the witness tampering statute also would have criminalized the inducement of an individual to "inform falsely" and to withhold "information" during an investigation. Id., § 9.

The Office of Legislative Research summarized the proposed amendments to the statutes by stating that "[t]he bill expands the scope of these crimes to cover conduct that occurs when a person believes an investigation is pending or about to begin. By law, each of these crimes covers conduct when a person believes an official proceeding is pending or about to begin. The Connecticut Supreme Court ruled that the evidence tampering crime did not cover situations where a person believes that only an investigation but not an official proceeding is likely (*State* v. *Jordan*, 314 Conn. 354 (2014))." Office of Legislative Research, Bill Analysis, S. Bill No. 1105: An Act Concerning Revisions to the Criminal Justice Statutes (2015), available at https://www.cga.ct.gov/2015/BA/2015SB-01105-R000741-BA.htm.

Both the Office of the Chief Public Defender (OCPD) and the Connecticut Criminal Defense Lawyers Association (CCDLA) opposed the proposed amendments and submitted written testimony identifying concerns about the inclusion of the term "investigation." See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9, 2015 Sess., pp. 4947–50. The CCDLA warned: "This bill will create scenarios in which parents, friends or associates of witnesses arguably would engage in 'tampering' behavior simply by discussing whether or not the wit-

ness should provide a statement to the police or otherwise cooperate with an ongoing investigation. If passed, this proposal will isolate witnesses and enable law enforcement to improperly exert pressure not only on the witnesses but on their families, friends and associates as well." Id., p. 4950, remarks of Elisa L. Villa, president of the Connecticut Criminal Defense Lawyers Association.

The OCPD posed a different scenario: "Assume for instance the following facts: a child age [fifteen] attends a school where there was a confrontation between other students. The [fifteen] year old was not involved but may have observed the confrontation. The [fifteen] year old is walking home from school, is stopped by the police and asked what he saw. The [fifteen] year old is afraid to talk to the police and does not provide any information. When he goes home and tells his parents what transpired, the parents tell him not to speak with anyone about the incident until they consult with an attorney. Are the parents telling this 'witness' to withhold information and therefore can [the parents] be charged with tampering with a witness?" Id., pp. 4947–48, remarks of Deborah Del Prete Sullivan, legal counsel to and director of the Office of the Chief Public Defender.

The proposal that the legislature ultimately enacted amended the tampering with or fabricating physical evidence statute to encompass such interference when a person believes a "criminal investigation conducted by a law enforcement agency" is pending, not just when a person believes an official proceeding is pending or about to be instituted. P.A. 15-211, § 9.[7] The legislature did not amend either the witness intimidation statute or the witness tampering statute, however.

Because the legislature enacted the amendment to § 53a-155 to include pending *investigations*, we can infer that, in response to *Jordan*, the legislature acted to criminalize conduct that we had not previously interpreted the statute to include—specifically, tampering with evidence during a criminal investigation, without the need to prove that the defendant believed an official proceeding "would probably occur . . . ." *State* v. *Ortiz*, supra, 312 Conn. 570. A rational reason to explain this expansion is that physical evidence could be the only evidence relied on to solve crimes. If physical evidence is destroyed or altered early enough in the investigation stage, the crime could remain unsolvable indefinitely.

Conversely, the legislature did not amend the tampering with a *witness* statute, § 53a-151, to include the inducement of another to inform falsely or to withhold information when a person believes only that an investigation is pending. From this, we can infer that the legislature did not reject our interpretation in *Ortiz*, leaving *Ortiz* in place as good law, and did not intend to expand the scope of the tampering with a witness statute to

the same degree as it expanded the scope of the tampering with physical evidence statute. See, e.g., *State* v. *Evans*, 329 Conn. 770, 807, 189 A.3d 1184 (2018) ("[t]he legislature is presumed to be aware of the [courts'] interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation"), cert. denied,    U.S.    , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019).

Having construed the statute and ascertained the legislature's apparent intent regarding the witness tampering statute, I must determine whether the statute applies to the facts of the present case, construing the record in the light most favorable to sustaining the verdict. See, e.g., *State* v. *Elmer G.*, 333 Conn. 176, 183, 214 A.3d 852 (2019). In my view, we must evaluate the defendant's conduct in relation to *Ortiz* and *Jordan*, as well as in relation to the conduct contemplated by the legislature when it considered amending the tampering statutes. These judicial and legislative guideposts make clear to me that the legislature, by not adopting the amendment to the witness tampering statute, did not intend to criminalize interference with every investigation and, specifically, did not intend to criminalize the inducement of others to withhold information or to falsely inform when there is no evidence to support an inference that, at *that* time, the individual also intended to attempt to influence such behavior in a future official proceeding. Rather, the legislature restricted application of the statute to conduct that the tamperer would have believed would induce *false testimony* or the *withholding of testimony* during an *official proceeding*— the intent requirements set forth in *Ortiz*.

First, in *Ortiz*, we discussed two contrasting scenarios by which to evaluate tampering conduct. See *State* v. *Ortiz*, supra, 312 Conn. 570–71. In one scenario, a person who committed a crime prevents the only witness to that crime from speaking to the police. Id., 570. The interference is undertaken to hinder the investigation and to prevent an official proceeding *against himself* from ever taking place. Id. Under *Ortiz*, that conduct would not fall within the scope of the statute. Id. ("[t]he individual certainly could believe that the police would investigate the crime, but he would have no reason to believe that an official proceeding would probably occur because there would be no evidence or witnesses on which the police could rely to identify and arrest [him]"). Id. In the other scenario, the potential tamperer knows that there is significant evidence connecting him to the crime and tampers with a witness who has information relevant to that crime. Id., 570–71. Under *Ortiz*, that conduct would fall within the purview of the statute because the conduct suggests an intent to induce that witness to testify falsely or to withhold evidence. Id., 571.

Although not dispositive, the facts of the present case

clearly fall closer to the first scenario than the second. The defendant was not involved in the altercation and had no reason to believe that an official proceeding would probably occur because there was no evidence or witness tying her to a criminal role in the altercation. She was not the alleged perpetrator of the crime; nor did she witness the incident. Some evidence suggests that someone might have inferred that an official proceeding *could* be instituted (the defendant was on the scene when the police arrived, heard Moulson recount his version of events to Baker and knew that one participant had been taken to the police station). But the record is devoid of evidence—and surely not evidence beyond a reasonable doubt—that the defendant in fact *believed* that an official proceeding was about to be instituted, i.e., "would probably occur . . . ." Id., 570. But cf. id., 572–73 ("there was substantial evidence on which the jury could have relied to find that the defendant believed an official proceeding would probably occur," including the defendant's confessions, his contacts with the police, his request to speak to an investigator working on the case, and his statements that he had heard about warrants for his arrest); *State* v. *Cavallo*, 200 Conn. 664, 673, 513 A.2d 646 (1986) (state "introduced ample evidence to convince a reasonable finder of fact that, at the time of his attempts to [induce a false account from a witness] . . . the defendant had known that an arbitration proceeding would soon be pending and that, during the hearing, the [witness] would probably be called to testify"); *State* v. *Pommer*, 110 Conn. App. 608, 620, 955 A.2d 637 (The state presented evidence that the "defendant knew that [an individual] had turned herself in to the police and had implicated [the defendant and two others] in the robbery. From this evidence, the jury reasonably could have inferred that the defendant believed that an official proceeding was about to be instituted."), cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). It is true of every investigation that a witness who seeks to interfere will have *some* information about the incident under investigation. Simply knowing about a crime and attempting to prevent the police from discovering more about what transpired does not, in and of itself, constitute witness tampering. In my view, the defendant's mere knowledge of participants' *involvement* in a potential crime under investigation is hardly a sufficient limitation on the scope of the statute, as it would virtually always impute to the defendant a *belief* that an official proceeding is about to be instituted. Importantly, both scenarios in *Ortiz* contemplate a tamperer who is acting to prevent inculpatory evidence about a crime *the tamperer himself* had committed from reaching the police and, ultimately, from reaching a jury.

We know from *Ortiz* that the legislature did not intend to criminalize all interferences with investigations. Missing from the record in the present case is

the type of evidence—and, more particularly, the defendant's awareness of that evidence—indicating that an official proceeding "probably would occur . . . ." *State* v. *Ortiz*, supra, 312 Conn. 570. Had her plan succeeded, no official proceeding would have ever ensued, undermining the argument that she believed an official proceeding was about to be instituted.

In this way, the facts of the present case no more support a conclusion that the defendant believed an "official proceeding . . . [was] about to be instituted"; General Statutes § 53a-151 (a); than did the facts of *Jordan*, and are perhaps more attenuated. Unlike the tamperer in *Jordan*, the defendant in the present case was not the target of the investigation. She did not engage in the altercation under investigation, although she knew the participants. It was not clear whether any one or all of the participants would be arrested that night, let alone that there would be a trial. "Instead, the only reasonable inference from the facts . . . [was] that the defendant [urged Rajewski to bloody his clothes and to get his story straight] in order [for Rajewski] to escape detection and avoid being arrested by the pursuing police officer." *State* v. *Jordan*, supra, 314 Conn. 388–89. In my view, it was therefore unreasonable for the jury to have inferred from the fact that the defendant urged Rajewski to deceive the officer that she subjectively believed "that an official proceeding against him was probable." Id., 386.

## II

In light of my conclusion that the legislature did not intend to criminalize the inducement of false testimony or the withholding of testimony during an investigation unless the evidence supports an inference that the defendant subjectively believed that an official proceeding would probably occur, it becomes clear that the state bore a heavy burden to satisfy the second element of the crime—that the defendant intended to attempt to induce false testimony at an official proceeding. In addition to the fact that, as discussed, I do not believe this is a case in which the state can demonstrate that the defendant believed an official proceeding was about to be instituted, given my understanding of the scope of the statute, I also do not believe that the state met its burden of proving that, on the evening in question, she attempted to convince Rajewski to testify falsely at a future proceeding.

The statute's legislative history contains another guidepost by which we can evaluate whether the legislature intended for the defendant's conduct to come within the second element of the statute—intent to attempt to induce false testimony. In its written testimony about Raised Bill No. 1105, which would have modified all three statutes; see part I of this opinion; the CCDLA warned that expansion of the tampering statute could criminalize friends or associates of wit-

nesses who engage in tampering behavior simply by discussing whether the witness should provide a statement to the police or otherwise cooperate with an ongoing investigation. See Conn. Joint Standing Committee Hearings, supra, p. 4950. In these scenarios, the potential tamperer is not at all involved as a participant in the crime under investigation but only becomes involved by telling a witness to withhold information from the police. The potential tamperer is also not subject to any criminal charges resulting from the investigation, other than a charge of tampering. The tamperer does not stand to benefit personally from the withholding of information. The tamperer's immediate intent, then, is to withhold information from the police to protect someone else from getting into trouble or from being arrested.

Nothing in the record suggests, like the scenario that the CCDLA warned of, that the defendant in the present case was attempting to induce Rajewski to lie *at an official proceeding*. Unlike the defendants in *Ortiz* and *Jordan*, she was not a suspect in the crime the police were investigating. She did not face potential prosecution in connection with the fight that took place. When the investigating officer, Baker, was asked during trial, "what was the effect of her text messages on your investigation," he responded, "[w]ell, when I left the scene . . . I had no reason to arrest her . . . she was being honest with me. . . . I had to arrest her now. She's trying to get someone to lie to me; that's interfering with my investigation." The defendant did not stand to benefit from information being withheld from the police other than by keeping her boyfriend from being prosecuted. That intent is exactly what the legislature declined to criminalize by not extending § 53a-151 to include interference with *investigations*—conduct that would be considered within § 53a-155 after the legislature's 2015 amendment. See P.A. 15-211, § 9.

This is not to say that a witness tampering charge is appropriate *only* when the tamperer stands to benefit personally by avoiding criminal charges or *only* when the tamperer is a witness to the underlying crime. I acknowledge that, under certain circumstances, an individual who is not involved in the crime and does not witness the crime certainly could be subject to a tampering charge. The Appellate Court examined that exact situation in *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004). In *Bennett-Gibson*, the defendant's sister offered the alleged victim-witness financial incentives to drop the case against her brother. Id., 50. What distinguishes *Bennett-Gibson* from the present case is that the tamperer in *Bennett-Gibson* approached the witness in the courthouse *after* the witness had lodged a formal complaint with the police and *after* the brother had been arrested and charged—all evidence establishing that an official proceeding had begun and that the

tamperer intended to influence testimony at that proceeding. Id. *Bennett-Gibson* clearly illustrates the point that, once the official proceeding has begun, the tamperer knows it has begun, and the damaging testimony is looming large at that proceeding; interference even by a third party may reasonably be inferred to demonstrate an intent to influence or prevent that testimony, thereby supporting a tampering charge. In the absence of evidence of at least an incipient proceeding, and more particularly the defendant's subjective belief that the proceeding was about to begin, an inference of the necessary intent remains legally tenuous.

In an attempt to bolster the state's plainly deficient proof of the defendant's intent on the night in question to induce Rajewski's false testimony at a future proceeding—which is what she was charged with and which I believe fails as a matter of legislative intent and evidence—the majority relies on the defendant's *own* testimony at her *own* trial in her *own* defense sixteen months later. From this, the majority undertakes a leap of logic: that "the jury reasonably could have concluded that the defendant had no qualms about perjuring herself on the witness stand and, from such a finding, could have inferred, in light of all the other evidence, that the defendant intended Rajewski to do the same when the time came."

I agree with the majority that, on the basis of her testimony as well the evidence presented by the state to rebut that testimony, the jury reasonably could have concluded that the defendant was "dishonest and not credible . . . ." For example, it could have concluded that the defendant lied when she testified that she did not send the text messages to Rajewski at all or that someone else had sent them. She also lied when she denied she was in a relationship with Rajewski at the time of the altercation with Moulson. And she lied once again when she insisted she was not in love with Rajewski at the time of the altercation or afterward. As is often the case these days, she was effectively hoisted on her own social media postings,[8] claiming, as with the text messages, they either were sent from a fake account or that her account had been hacked. The majority therefore makes a convincing case that she was an unrepentant perjurer.

I am a firm believer in our often stated admonition that the line between fair inference and improper speculation is, "frankly, a matter of judgment," and that it is not my role to substitute my own view for the jury's exercise of that judgment. (Internal quotation marks omitted.) *State* v. *Rhodes*, 335 Conn. 226, 238,      A.3d      (2020). The defendant, after all, chose a jury trial. But the majority would have us conclude that the jury reasonably could have inferred from the fact that she testified falsely at her own trial, long after Baker's investigation of the altercation between Rajewski and Moul-

son, that she also intended by her actions all those months before to induce *Rajewski* to testify falsely at any later trial arising from the altercation. This is too much for me.

Could the jury have come to the same conclusion—that she is a liar—if she had lied about her hair color or her age? Possibly, and yet, so what? How do those lies bring her conduct within the scope of the statute? The defendant's false testimony at her own trial is hardly probative—and certainly not dispositive—of her intent to attempt to induce Rajweski to lie at a different official proceeding when she was trying to get him to lie to the police on the evening in question.

The fundamental problem with the defendant's own testimony is that it suffers from a double remoteness problem. Under the majority's reasoning, the defendant's false testimony in 2017 is projected back in time sixteen months to inform the defendant's intent on the night of the altercation in 2016, and that intent is then propelled forward to influence a future official proceeding, whenever it is held. Proving a defendant's intent to influence a future proceeding by having to demonstrate her subjective belief that that proceeding was about to be instituted is challenging enough. But while it is certainly appropriate to seek to prove the elusive element of intent on the basis of circumstantial evidence; see, e.g., *State* v. *Bonilla*, 317 Conn. 758, 766, 120 A.3d 481 (2015); in my view, using the circumstances of a defendant's *future* testimony to make out a case of an *earlier* intent to influence a *future* proceeding requires that the majority attempt a feat of elasticity that the state does not undertake on its own.

This is how the majority explains it: The defendant's perjury "undermines any suggestion that the defendant could not be presumed to have contemplated that Rajewski should lie at any trial that resulted from the police investigation of the altercation." "[U]ndermin-[ing]" a "suggestion" of the defendant's "presumed" "contemplat[ion]" sixteen months beforehand hardly sounds like proof of an intent beyond a reasonable doubt. Quite simply, I disagree with the majority that the jury's determination of the defendant's credibility at her own trial in 2017 can serve to establish the statutory requirement of intent to attempt to induce false testimony at an official proceeding that, *at best*, may have been about to be instituted in 2016.

The jury reasonably could have inferred from the fact that the defendant lied at her own trial that she lies, especially for her own benefit; however, it could not reasonably infer from this evidence that she intended to induce another person to lie in an official proceeding that did not involve her. Lying, by itself, and outside of the perjury context, is not a crime. Additionally, telling someone else to lie to the police, without more, does not violate any criminal statute in Connecticut, as it

would under federal law. See 18 U.S.C. § 1001 (a) (2018) ("whoever . . . (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact . . shall be fined . . . [or] imprisoned"). The legislative history tells us that the legislature did not intend to reach so far and that there must be some limit on the scope of the witness tampering statute. The limitation lies in requiring proof that the tamperer "believ[es] that an official proceeding is pending or about to be instituted" and "attempts to induce a witness to testify falsely . . . [in] any official proceeding." General Statutes § 53a-151 (a). In the absence of some evidence of belief and intent, the statute sweeps in the friend or parent who the CCDLA warned could be prosecuted for tampering, exclusively on the basis of a discussion of whether to provide a statement to the police or to cooperate with their investigation. See Conn. Joint Standing Committee Hearings, supra, p. 4950. I do not believe the legislature intended to criminalize such conduct.

I agree with the defendant that the chain of inferences required to get from the defendant's texting her boyfriend to lie to the police to intending to have her boyfriend lie while testifying during a trial is simply too tenuous to fall within the conduct that I conclude the legislature intended to criminalize. Moreover, "unless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." (Internal quotation marks omitted.) *State* v. *Cote*, 286 Conn. 603, 615, 945 A.2d 412 (2008). The majority's conclusion would expand the scope of the witness tampering statute beyond that of our decision in *Ortiz* and would, in my view, conflict with the legislature's rejection of the proposed amendment, which reinforced the view that the statute should not apply to every interference with an investigation. The statute and our case law demonstrate that an intent to attempt to influence testimony can be inferred only when the defendant subjectively believes that an official proceeding is about to be instituted. The evidence in the present case does not establish that the defendant subjectively believed that an official proceeding probably would occur. The state failed to establish that subjective belief, and the record is devoid of evidence to establish that the defendant acted with the intent to attempt to induce false testimony at a proceeding she did not subjectively believe was about to be instituted.

Accordingly, I would reverse in part the judgment of the Appellate Court and remand the case to that court with direction to direct the trial court to render judgment of not guilty on the charge of witness tampering. I therefore respectfully dissent.

[1] No one contends that Rajewski actually testified falsely or withheld testimony, so the allegation is limited to the intent element of *attempting* to induce false testimony.

[2] No one contends that an "official proceeding" was pending at the time the police interviewed any of the witnesses in the present case.

[3] See 2 A.L.I., Model Penal Code and Commentaries (1980) § 241.6 (1), p. 162 (witness tampering extends to any person who believes "that an official proceeding or investigation is pending or about to be instituted").

[4] We noted in *Ortiz* that, "[a]lthough the statute does not specify whether the term 'belief' is judged by an objective or subjective standard, this court previously has determined that the statute 'focuses on the mental state of the perpetrator to distinguish culpable conduct from innocent conduct.'" *State* v. *Ortiz*, supra, 312 Conn. 569, quoting *State* v. *Cavallo*, 200 Conn. 664, 669, 513 A.2d 646 (1986). Thus, § 53a-151 (a) applies to "any conduct that is intended to prompt a witness to testify falsely or refrain from testifying in an official proceeding that *the perpetrator believes* [is] pending or imminent." (Emphasis added.) *State* v. *Cavallo*, supra, 668. "Put simply, under § 53a-151 (a), as long as the defendant believes that an official proceeding will probably occur, it does not matter whether an official proceeding is actually pending or is about to be instituted." (Emphasis omitted.) *State* v. *Ortiz*, supra, 569.

[5] At the time of the events in *Jordan*, § 53a-155 (a) provided: "A person is guilty of tampering with or fabricating physical evidence if, *believing that an official proceeding is pending, or about to be instituted*, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding; or (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such official proceeding." (Emphasis added.) General Statutes (Rev. to 2007) § 53a-155 (a).

[6] The proposed amendments in §§ 9 through 11 of Raised Bill No. 1105 are as follows. We note that, within the following quoted material, proposed additions are indicated by underlining and proposed deletions are enclosed in brackets.

"Sec. 9. Section 53a-151 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2015*):

"(a) A person is guilty of tampering with a witness if, believing that an <u>investigation or</u> official proceeding is pending or about to be instituted, [he] <u>such person</u> induces or attempts to induce a witness to testify <u>or inform</u> falsely, withhold testimony, <u>information, a document or a thing,</u> elude legal process summoning [him] <u>such person</u> to testify <u>or provide evidence,</u> or absent himself <u>or herself</u> from any official proceeding <u>or investigation to which such person has been summoned</u>.

\* \* \*

"Sec. 10. Section 53a-151a of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2015*):

"(a) A person is guilty of intimidating a witness when, believing that an <u>investigation or</u> official proceeding is pending or about to be instituted, such person uses, attempts to use or threatens the use of physical force against a witness or another person with intent to (1) influence, delay or prevent the testimony of the witness in the official proceeding, <u>or the cooperation of the witness in the investigation,</u> or (2) induce the witness to testify <u>or inform</u> falsely, withhold testimony, <u>information, a document or a thing,</u> elude legal process summoning the witness to testify <u>or provide evidence,</u> or absent himself or herself from the official proceeding <u>or investigation to which such person has been summoned</u>.

\* \* \*

"Sec. 11. Section 53a-155 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2015*):

"(a) A person is guilty of tampering with or fabricating physical evidence if, believing that an <u>investigation or</u> official proceeding is pending, or about to be instituted, [he] <u>such person</u>: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such <u>investigation or</u> proceeding; or (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such <u>investigation or</u> official proceeding."

[7] Section 9 of P.A. 15-211, which amended General Statutes (Rev. to 2015) § 53a-155, provides in relevant part: "(a) A person is guilty of tampering with or fabricating physical evidence if, believing that <u>a criminal investigation conducted by a law enforcement agency or</u> an official proceeding is pending, or about to be instituted, [he] <u>such person</u>: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such <u>criminal investigation or official</u> proceeding; or (2) makes, presents or uses any record, document or thing knowing it to be

false and with purpose to mislead a public servant who is or may be engaged in such <u>criminal investigation or</u> official proceeding. . . ."

Additions to § 53a-155 (a) are indicated by underlining and deletions are enclosed in brackets.

[8] The defendant's Facebook account contained the following, which was admitted into evidence at trial: "I love [Rajewski] with all my heart and would do anything for him! I'm sure u know he just broke up with me. I'm sure you know I lied and said I saw [Moulson] get out of his car and go after [Rajewski] in court. . . . I'm sure u know I gave him 100 [percent] of me and loved him unconditionally when he was at his worst! [A]nd would give up everything I have to be with him! . . . [S]o I'm sure u know he broke my heart . . . . [P]lease tell him I will be here waiting. [A]nd he's my soulmate . . . . [H]e brought out the real me after being abused for [seven] years . . . ."

———————————————————